KAUFMAN *v.* KAUFMAN'S ESTATE.

1. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

In the prosecution of a husband's claim against his wife's estate for services and contributions to her during her lifetime, his testimony was inadmissible, under the statute, since the facts testified to, if true, were equally within the knowledge of the deceased.[1]

[1]Witnesses, 40 Cyc. p. 2312.

2. HUSBAND AND WIFE—PRESUMPTION THAT SERVICES PERFORMED BY HUSBAND WERE GRATUITOUS.

Since there is a presumption arising from the relationship that services performed and contributions furnished by a husband to his wife are gratuitous, in order for him to recover therefor from his wife's estate he must establish an expectation on his part to be paid, and on her part that she would pay, therefor.[2]

3. TRIAL—MOTION FOR DIRECTED VERDICT.

In determining defendant's motion to direct a verdict, the testimony with its legitimate inferences most favorable to plaintiff must be accepted.[3]

4. EXECUTORS AND ADMINISTRATORS — HUSBAND'S CLAIM AGAINST WIFE'S ESTATE—EVIDENCE—SUFFICIENCY.

Where there was some evidence sustaining a husband's claim against his wife's estate outside that given by plaintiff, which was erroneously received, the trial judge did not err in submitting the case to the jury.[4]

5. APPEAL AND ERROR—NEW TRIAL—QUESTIONS REVIEWABLE.

In the absence of a motion for a new trial, the Supreme Court may not consider defendant's claim of want of merit in plaintiff's case.

Error to Delta; Driscoll (George O.), J., presiding. Submitted January 6, 1925.    (Docket No. 7.)    Decided April 3, 1925.    Rehearing denied June 18, 1925.

Louis Kaufman presented a claim against the estate of Minnie Kaufman, deceased, for services rendered. The claim was disallowed by the commissioners, and plaintiff appealed to the circuit court.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*H. J. Rushton,* for appellant.

*Doyle & Barstow,* for appellee.

FELLOWS, J.    Plaintiff filed a claim amounting to upwards of $9,000 against the estate of his deceased

[2]Executors and Administrators, 24 C. J. § 881; [3]Trial, 38 Cyc. p. 1586; [4]Executors and Administrators, 24 C. J. § 1076 (1926 Anno).

wife.    It covered the period of their married life. His claim is thus tersely stated by the trial judge in his charge:

"Now it is the claim of the claimant here that during the lifetime of Minnie Kaufman he performed certain services and made certain contributions to the estate of Minnie Kaufman, with the expectation on his part of being compensated therefor by her will; that the deceased, Minnie Kaufman, knew and understood this, and intended and promised to pay him therefor, or rather to compensate him therefor by and through her will; but that she did not do so, and that he is therefore here entitled to recover the reasonable value of said services and contributions."

He recovered a judgment of $5,000 and the case is brought here by the estate.    Both parties had been previously married and each had children.    No children were born to them during their 30 years of married life.    Deceased successfully conducted a millinery store at Escanaba and accumulated property worth upwards of $20,000.    By her will she gave plaintiff $500; she also carried life insurance in which he was beneficiary in the sum of $1,300.

Plaintiff was called as a witness in his own behalf and over repeated and insistent objections that he was testifying to facts which, if true, were equally within the knowledge of the deceased, was permitted to testify at length.    Obviously before the statute operates to exclude testimony, it must be apparent that the facts, if true, were equally within the knowledge of the deceased.    But this was so apparent in the instant case, both by reason of the things testified to and the claim of plaintiff upon which he sought to recover, that his testimony should have been excluded when it was first offered.    He was permitted to testify that various pieces of real estate which were deeded to deceased were purchased with his money; that he

spent his money and time in their improvement; that some of them were sold at a profit and inferentially that deceased had the proceeds; that other pieces were kept by her; that one piece of property which she kept he paid $1,800 for and put on considerable improvement and that it was worth $8,000 at the time of the trial, and that he had furnished deceased in her lifetime in labor, services and material about $18,000 or $20,000.     Other testimony was given by him which we need not relate.     There were two people who knew who paid the purchase price of the property which was deeded from time to time to Mrs. Kaufman.     They were plaintiff and his wife.     There were two people who knew who paid for the material and labor that improved the property.     They were the plaintiff and his wife.     One was dead and the statute sealed the lips of the other.

But the very claim which plaintiff here asserts against his wife's estate and which he must establish under his own theory of the case is that all of the services he performed and all materials he furnished were performed and furnished with an expectation on his part that he would receive compensation and that she received the same with an expectation on *her part* to pay therefor.     How the services could be performed and the material furnished with an expectation on the part *of deceased* that she would pay for them without any knowledge on her part that they were being performed and furnished is difficult to perceive. Much that plaintiff seeks to recover for occurred a quarter of a century before her death.     To prevent the running of the statute of limitations he claimed that it was agreed between him and his wife that the very services, etc., he was testifying about should be compensated for by her in her will.     Again we say it is difficult to understand how any such agreement would or could be made without any knowledge on her

part of the services.    It was error to receive this testimony.; it was error not to strike it out.

At the close of plaintiff's proofs and again at the close of all the proofs, counsel for the estate moved for a directed verdict on the ground that the testimony was not sufficient to establish a contract—to overcome the presumption arising from the relation of husband and wife that the services were performed gratuitously.    Both motions were overruled and reserved under the Empson act.    Later the trial judge declined to enter judgment notwithstanding the verdict.    Error is assigned on these respective rulings. In numerous cases this court has held that in this class of cases where the family relation exists, it is not necessary that the claimant establish a formal contract in order to rebut the presumption; that it is sufficient if it is established that both claimant and the deceased acted with the understanding that the services were to be paid for, or, as sometimes stated, with the expectation on the part of the claimant performing the services that he is to be paid compensation, and received with the expectation on the part of the deceased that he is to pay compensation.    Among the cases see *In re Abel's Estate*, 173 Mich. 93; *Sammon* v. *Wood*, 107 Mich. 506; *In re Scully's Estate*, 199 Mich. 181; *Shane* v. *Shearsmith's Estate*, 137 Mich. 32; *Maynard* v. *Schrumpf's Estate*, 192 Mich. 494; *In re Hamlin's Estate*, 223 Mich. 156.    There was testimony that plaintiff performed some services upon and about his wife's property; there was some testimony showing testamentary intent on her part to provide for him; but we are persuaded that the only testimony in the record outside that given by plaintiff which took the case to the jury was that given by his brother who testified:

"*Q.* Did you ever have any talk with Mrs. Kaufman about her business dealings with Louis as to what

Louis was doing for her, and things of that kind? Did you ever have any talk with her in which reference was made to Louis working for her?

"*A.* Yes.    That is, at one time—we never used to talk about any such things as that, but there did come a certain time when Louis was arrested and sent down to Detroit, and it worried me a little bit, and I went down to Mrs. Kaufman at one time and asked if she had heard from Louis; and she said no, she had not heard from him.

"*Q.* This was when Louis was in Detroit, serving a sentence for violating the liquor law?

"*A.* Yes, sir.

"*Q.* All right?

"*A.* And we sat and talked a little more, and I went home.    There was never anything said; and I waited for about a week, and I went up there again. And Mrs. Kaufman was there, and I asked her, 'Have you heard anything from him yet?'    She says, 'No, I have not heard from him yet.'    She looked at me, and she says, 'Now, George, look here:'    She says, 'You know I have got a right to get a divorce from Louis now.'    I says, 'I presume, Mrs. Kaufman, you have a right to get a divorce from him; but would you take a divorce from a man you lived thirty years with?

"*Q.* What was she referring to as her ground for divorce?

"*A.* On account of the disgrace to her.

"*Q.* Going to prison?

"*A.* Going to prison, yes.    I says, 'Would you have a divorce from a man you have been thirty years with? And you have lived so long together.    How did you accumulate your property?    Did you accumulate it, or who accumulated it for you?    Did anybody else than Louis help you any in accumulating this property?'    She broke down and the tears came and she says, 'No, George, Louis was always a good father for the family, and he gave us support.'    I says, 'I am awful sorry that Louis went down there, and I am going to write him a letter to see if he needs any money.'

"*Q.* Did you ever have any conversation with her in reference to this same subject?

"*A.* Oh, yes. We talked quite a little that day together, that I didn't mention.

"*Q.* Was there anything said at that time or any other time about Louis, what he was going to get, if anything, for his work, etc.?

"*A.* She says, 'Louis has always got a home as long as we are together.' And she says—for his work that he had done, that I mentioned, she says, 'I must say, I had no help from either of my children except only what help I got from Louis.' And she says, 'I will remember Louis as long as I live, that he shall have a home; and Louis knows it.'

"*Q.* When you say, 'as long as I live' do you mean, while she lived, or after she died?

"*A.* After she died, he would have a home; and Louis knew that all the time, that he was going to have a home.

"*Q.* He was to have a home?

"*A.* Yes.

"*Q.* Supposing he and the children could not agree; was there anything said as to what would happen then?

"*A.* Why, sure.

"*Q.* Tell us that?

"*A.* She said, 'You know'—it came like this, when she said he was going to have a home, I says, 'What kind of a home are you going to give Louis?' And she says, 'Well, such a home as that he had with me.' I says, 'For instance, suppose they couldn't get along together?' 'Then let the children settle with him, then,' she says. That is what she said there, 'Let the children settle with him.' This talk was two or three days before she went to Chicago."

Having in mind the holdings in the cases cited and the rule that upon defendant's motion to direct a verdict the testimony with its legitimate inferences most favorable to plaintiff must be accepted, we can not say that plaintiff was not entitled to go to the jury. The trial judge did not err in submitting the case to the jury. Much space is taken in defendant's brief in discussing the facts and in pointing out the want of merit in plaintiff's claim. But no motion for

a new trial was made and we are, therefore, not called upon to consider this question.

The judgment will be reversed and a new trial granted.    Defendant will recover costs of this court.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.