## *In re* CLARK'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS—SERVICES—CONTRACTS—QUESTION FOR JURY.

In a claim against an estate for personal services, based on failure of the deceased to comply with a verbal contract to convey certain property in return for such services, whether they were performed under such contract was a question for the jury, under the evidence.[1]

2. SAME—CONTRACTS—SPECIFIC PERFORMANCE—QUANTUM MERUIT.

Where the services were performed in reliance upon such contract, but, because of the statute claimant is not entitled to specific performance thereof, she is entitled to recover against the estate the reasonable value of such services.[2]

3. SAME—VALUE OF SERVICES—EVIDENCE—SUFFICIENCY.

Evidence of the value of the services performed, *held*, sufficient to warrant submission of that question to the jury.[3]

4. APPEAL AND ERROR — DAMAGES — EXCESSIVE VERDICT — WHEN SUPREME COURT WILL INTERFERE.

The determination of the jury in its award of damages will be interfered with by the Supreme Court only when it appears from the amount allowed that the jury either did not follow the instructions of the trial court or were influenced by some consideration other than the evidence submitted to them.[4]

5. EXECUTORS AND ADMINISTRATORS—EXCESSIVE VERDICT.

Where it appeared that claimant, in the performance of the contract for services, had conducted a boarding and rooming house, of which deceased was part owner, for 13 years, receiving only a small weekly allowance therefor, and had also rendered personal services for deceased who required considerable care and attention, an award of $6,600 cannot be said to be excessive.[5]

6. SAME—EVIDENCE—VALUE OF PROPERTY—INSTRUCTIONS.

On such claim, proof of the value of the property was

---

[1]Executors and Administrators, 24 C. J. § 2191; [2]Id., 24 C. J. §§ 882, 885; [3]Id., 24 C. J. § 2191; [4]Appeal and Error, 4 C. J. § 2847; [5]Id., 4 C. J. § 2847.

properly admitted, where its consideration was permitted only in case the jury should find that the services were rendered under the contract, and was limited to the value of the deceased's interest therein.[6]

Error to Lenawee; Hart (Burton L.), J.    Submitted January 20, 1926.    (Docket No. 108.)    Decided April 14, 1926.

Hattie E. Lambie presented a claim against the estate of Emma C. Clark, deceased, for services rendered. Judgment for claimant.    Contestant brings error. Affirmed. ·

*Clark, Emmons, Bryant & Klein*, for appellant.

*Baldwin & Alexander*, for appellee.

SHARPE, J.    Emma C. Clark, long a resident of Adrian, died on June 27, 1923.    She left a will, executed on May 7th of that year.    After its probate, Hattie E. Lambie presented a claim against the estate for personal services rendered by her to the deceased during the last 13 years of her life.    The record does not disclose the result in probate court.    On appeal to the circuit, the claim was allowed by the jury at $6,600, to which $440 interest was added.    Judgment was entered thereon.    A motion for a new trial was denied.    The case is here for review on writ of error.

1. Plaintiff's right to recover.    The record discloses that in 1910 three sisters, Mrs. Knapp, Mrs. Stowell, and Mrs. Clark, were the owners by inheritance of certain property in the city of Adrian, known as the "Colonial Home."    It consisted of a large rooming and boarding house and the grounds pertaining thereto.    They were then living in it.    Mrs. Knapp's husband lived there also.    The other sisters were widows.    Mrs. Knapp was at that time 72 years of

[6]Executors and Administrators, 24 C. J. § 2179.

age, Mrs. Clark 63, and Mrs. Stowell between these ages. The claimant is the daughter of Mr. Knapp by a former wife. Her husband died in 1894. For several years prior to 1910 she had been employed as manager in one of the cottages of the Industrial Home for Girls in that city. In 1910 she left this employment and entered upon service at the Colonial Home, which continued uninterruptedly until Mrs. Clark's death in 1923. It appears that she at first had charge of the home under Mrs. Knapp's management, and later had full supervision herself. It is her claim that she entered upon such service on the understanding or agreement with the three sisters that, for the service to be rendered in managing the home, and for the personal attention she should give to these elderly ladies, she should receive this property on the death of the survivor of them.

Mrs. Stowell died in 1912. Before her death, she conveyed her interest in the home property to Mrs. Clark. Mrs. Knapp died in 1923, a few months before Mrs. Clark. Her husband had passed away several years earlier. She left a will, in which she bequeathed her interest in the home property to Mrs. Clark for life, then to claimant for her life, with power of sale and certain provisions not here important.

The claim herein is founded on the contract, performance by claimant, failure of Mrs. Clark to comply with its terms, reliance thereon by claimant, and inability to secure specific performance, thus permitting her recovery against the estate for the reasonable value of the services rendered the deceased.

Counsel for the estate insist that there was no sufficient proof that such a contract was made to justify the submission of the question to the jury. Claimant's brother, Frank L. Knapp, who lived in Denver, testified that he visited his relatives in Adrian "on an average of twice a year;" that on one occasion he

complimented his stepmother and Mrs. Clark on the manner in which the home was being conducted, and that the former said "that it was all to be Hattie's" (referring to claimant) when they were gone, that she was to have it "for compensation for the work and the care and attention and general supervision that my sister did," and that Mrs. Clark acquiesced in what was said. He testified to other conversations of like import.

Edmund Childs, long a resident of Adrian, testified that "about twelve years ago," and while he and his wife were living at the Colonial Home, Mrs. Clark said to him "that she and Mrs. Knapp had induced Hattie, Mrs. Lambie, to leave her position and come there, for which she was to have a moderate weekly stipend, and when the ladies died, she was to have the Colonial Home. That was to pay for her services." On cross-examination, when asked as to whether it was not said that claimant was receiving a weekly salary, he testified:

"I wouldn't say a weekly salary, a weekly allowance; that and the Colonial Home, when the old ladies were through with it, was to be her compensation, so Mrs. Clark and Mrs. Knapp told me."

There was other testimony of like import. Counsel for the estate concede that the relations of the parties were not such as to raise any presumption that the services rendered were gratuitous. The proof submitted was sufficient in our opinion to carry the question to the jury as to whether it was performed under a contract as claimed. *Van Fleet* v. *Van Fleet*, 50 Mich. 1; *Dickerson* v. *Dickerson*, 50 Mich. 37; *In re Williams' Estate*, 106 Mich. 490; *Sammon* v. *Wood*, 107 Mich. 506; *Shane* v. *Shearsmith's Estate*, 137 Mich. 32; *Luizzi* v. *Brady's Estate*, 140 Mich. 73; *In re Knox's Estate*, 220 Mich. 469; *Kaufman* v. *Kauf-*

*man's Estate,* 230 Mich. 388; *Riggs* v. *Riggs' Estate,* 232 Mich. 579.

That claimant performed services for deceased, relying thereon, is fairly established. That deceased failed to perform, and that claimant may not have specific performance, by reason of the statute, is not questioned. It follows that she is entitled to recover the reasonable value of the service rendered the deceased.

2. Value of services. It is insisted that there was no sufficient proof of the value of the service rendered to carry the question to the jury. Anna Schwartz, who worked at the home most of the time from March, 1919, until Mrs. Clark's death, testified as to the character of the personal service rendered deceased by claimant. On being asked what it was worth, she answered: "Well, I should think about $10 a week, during all the time I was there." Cornelia Holmes, a practical nurse, who attended Mrs. Knapp in her last illness, testified also as to the character of the service rendered by claimant, and, on being asked "what it was reasonably worth a week," answered: "Well, I should think, it would be reasonably worth from five to twenty dollars." Clearly, there was sufficient proof to warrant the submission of this question to the jury.

3. Excessive verdict. The claim that the verdict is excessive received careful consideration by the trial court in denying the motion for a new trial. He reviewed the evidence relating thereto at some length, and concluded that the verdict was not so clearly excessive as would justify him in setting it aside. We are likewise so impressed. We are at all times loath to interfere with the determination reached by a jury in its award of damages, and do so only when satisfied from the amount allowed that the jury either did not follow the instructions of the court or were influenced

by some consideration other than the evidence submitted to them.

Claimant received but a small weekly allowance during the 13 years she was at the home. Mrs. Clark, just prior to her coming, had suffered from a stroke of paralysis, and was somewhat crippled thereafter. Dr. Emily Stark, who boarded at the home and attended Mrs. Clark professionally, testified at length as to her physical condition and the necessity of some one giving her personal attention. She stated that, while Mrs. Clark did not need nursing all the time, "it was necessary for some one to be with her in the way of doing the labor for her."

May McElroy, who lived at the home from 1908 until May, 1922, also testified at length as to the character of the service rendered by claimant. She said:

"Mrs. Clark was frail at the time I went there, and this frailty grew, and especially during the later years of my being there this frailty and this inability to care for herself grew very rapidly. In other words, she failed rapidly, both mentally and physically. * * * It is my impression that during all the time I was there, she demanded a good deal of attention, and as years went on she grew feebler and feebler bodily, and grew more and more dependent and more and more exacting."

The care given her by claimant was thus summed up by the witness:

"She gave her the attention that a good daughter would give to an old and feeble mother."

There was proof of service rendered, due to the weakness of Mrs. Clark, which an ordinary employee would have been likely to have refused to perform. The value of such services is difficult to estimate. Several witnesses, conversant with the condition of Mrs. Clark and the attention given her by claimant,

expressed an opinion of what they were reasonably worth. The verdict of the jury is within the limits of such estimates, and we cannot say, as a matter of law, that it is so grossly excessive that we should set it aside.

4. Value of the property. Error is assigned upon the admission of proof of the value of the Colonial Home and the instruction of the court that the jury might consider it in determining the value of the service rendered. The instruction carefully limited consideration of this proof to the value of Mrs. Clark's interest in the property, and permitted its consideration only in case the jury should find that the services were rendered under the contract. There was no error in the admission of this evidence or in the instruction as given. *Riggs* v. *Riggs' Estate, supra,* and cases cited.

*Kutzner* v. *Stuart,* 215 Mich. 270, relied on by defendant, is easily distinguished. In that case the personal property, the value of which plaintiff sought to have considered as fixing a basis of recovery, was to pass to plaintiff only in the event that the defendant disposed of the farm during the period for which plaintiff had the right to operate it, and no such disposition of it had been made. In the case before us, under the contract the interest of Mrs. Clark was to pass to plaintiff upon her death, an event which had *arrived* before the claim in this case was filed. In that case it was said that if plaintiff had been seeking to recover under a *quantum meruit* the contract would have been admissible if it was helpful in estimating the damages.

The other assignments have been examined, but do not seem to merit discussion.

The judgment is affirmed.

SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. BIRD, C. J., did not sit.