SAMUELSON v. OLSON TRANSPORTATION COMPANY.

1. AUTOMOBILES—WRONG SIDE OF ROAD.
   One who drives onto the wrong side of the road assumes the liability for so doing.

2. SAME—TRUCK AND TRAILER—WRONG SIDE OF ROAD—NIGHTTIME—QUESTION OF NEGLIGENCE FOR JURY.
   Where westbound driver of truck and oil tank trailer drove his equipment at night partly onto the south side of road with intention of turning into private property, a question of fact for the jury was presented as to whether trucker was negligent.

3. SAME — CONTRIBUTORY NEGLIGENCE — NIGHTTIME — PASSENGER'S CAUTION TO DRIVER.
   In passenger's action against truck company for injuries received in collision between truck in which plaintiff was riding and oil tank truck and trailer combination which had gotten onto the wrong side of the road in the nighttime and in midwinter in the Upper Peninsula, whether or not plaintiff who had observed the oil tank vehicle some 150

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am. Jur., Automobiles, § 286.
[3] 5 Am. Jur., Automobiles, § 478.
[4–7] 15 Am. Jur., Damages, §§ 70, 75, 209–228.
[4–7] Excessiveness of verdict in action by person injured for injuries not resulting in death. 46 A.L.R. 1230, supplemented in 102 A.L.R. 1125.
[8] 3 Am. Jur., Appeal and Error, § 1069.
[8] Admissibility of evidence, and propriety and effect of questions, statements, comments, et cetera, tending to show that defendant in a personal injury or death action carries liability insurance. 56 A.L.R. 1418, supplemented in 74 A.L.R. 849, and 95 A.L.R. 388.
[8–10] 53 Am. Jur., Trial, §§ 463, 495, 496.
[10] 3 Am. Jur., Appeal and Error, § 1081.
[2, 11, 12] 5 Am. Jur., Automobiles, §§ 323, 333.
[11, 12] 5 Am. Jur., Automobiles, § 735.
[13] 3 Am. Jur., Appeal and Error, § 1097.

feet before reaching it was guilty of contributory negligence by failing to so advise his driver who also then observed it and started applying his brakes and turned to the right presented a question of fact for the jury and sufficient evidence to support its verdict for plaintiff.

4. DAMAGES—EARNING POWER—PERSONAL INJURIES—HOSPITAL AND MEDICAL EXPENSE.

Verdict and judgment for $25,000 to 31-year-old healthy, married man with two children, who was earning $8 a day, who sustained paralysis of lower lip and an upper eyelid, who incurred $376.43 expense for hospitals and doctors, who still suffers from headaches and dizziness, disfigurement of the face, and may yet suffer traumatic epilepsy and mental instability, *held,* not excessive.

5. SAME—PERSONAL INJURIES—PAIN AND SUFFERING—QUESTION FOR TRIER OF THE FACTS.

There is no absolute standard by which the amount of damages in personal injury cases can be measured, as the amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts.

6. SAME—PERSONAL INJURIES—EXCESSIVE VERDICT—PREJUDICE—SYMPATHY.

Verdicts of juries for personal injuries are not disturbed on the ground that the amount is excessive unless it is such as to shock the conscience or has been secured by improper means, prejudice or sympathy.

7. SAME—APPEAL AND ERROR—PERMANENT INJURIES—PAIN AND SUFFERING.

The Supreme Court does not substitute its opinion for that of the jury, especially where permanent injuries and pain and suffering are an important element of the damages.

8. APPEAL AND ERROR—PERSONAL INJURY CASE—INSURANCE.

On appeal from verdict and judgment for plaintiff in personal injury case, record *held,* to have disclosed that neither counsel proceeded in bad faith with respect to injecting the question of insurance within the hearing of the jury.

9. SAME—PREJUDICE—ARGUMENT TO JURY.

Fact that plaintiff's counsel kept before the jury the name of company for which defendant transportation company was transporting tank truck full of heater oil *held,* not to have committed prejudicial misconduct in view of statement by defendant's counsel that whether the defendant

or the oil company hauled latter's products into the Upper Peninsula the price of hauling those products is going to be reflected in the price which the oil company charges for them.

10. SAME—PREJUDICE—DRAMATIZATION OF PERMANENT INJURIES.
    Fact that plaintiff's counsel had plaintiff and his wife excused from the courtroom while plaintiff's witness, a doctor, testified that plaintiff's injuries received in automobile accident would be permanent, although dramatic, *held*, not prejudicial in view of the trial court's like characterization.

11. AUTOMOBILES—LEFT TURN—REQUEST TO CHARGE.
    Requested instruction to the effect that if defendant's truck driver had made sure that he could properly make a left-hand turn in safety that it then became the duty of the driver of truck in which plaintiff was riding to yield the right of way to defendant's equipment was properly refused where defendant's truck driver testified that he was not certain when he turned as to whether he could make the turn in safety.

12. SAME—WRONG SIDE OF ROAD—INSTRUCTIONS.
    In action by logging truck passenger against transportation company whose oil tank truck and trailer were standing on the left side of highway at night in midwinter in front of a gasoline station, instruction relative to the respective duties of the drivers in which the defendant's driver was held up to a high degree of care in placing the vehicle on the left side of the road but not guaranteeing that such action was taken in safety *held*, proper.

13. APPEAL AND ERROR—INSTRUCTIONS.
    In construing a charge to the jury, it must be considered in its entirety and isolated excerpts which might be erroneous in themselves will not require reversal unless prejudicial.

14. SAME—INSTRUCTIONS IN PERSONAL INJURY ACTION—DAMAGES.
    Instructions in personal injury action relative to damages suffered by plaintiff, when taken as a whole, *held*, not to have misled the jury on the issue involved nor to have prejudiced the defendant notwithstanding a reference was made to the present and future cost of living.

15. SAME—AUTOMOBILES—VERDICTS—GREAT WEIGHT OF EVIDENCE.
    Verdict for plaintiff in action for personal injuries received while he was a passenger in a logging truck that collided with defendant's oil tank truck and trailer while latter was

stopped on wrong side of road at night in midwinter in front of a gasoline station *held,* supported by substantial and competent evidence and not contrary to the great weight of evidence.

Appeal from Marquette; Bell (Frank A.), J. Submitted January 5, 1949. (Docket No. 18, Calendar No. 44,226.) Decided April 11, 1949.

Case by John Samuelson against Olson Transportation Company, a Wisconsin corporation, for personal injuries sustained in collision between motor vehicles. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*McGinn & Fitzharris,* for plaintiff.

*George C. Quinnell,* for defendant.

Bushnell, J. This is an action for damages for personal injuries suffered by plaintiff in an automobile accident on January 18, 1947. The accident happened about 10:30 p.m., on M–35 about three and a half miles east of Gwinn in Marquette county, Michigan.

Plaintiff, on the day in question, had been employed at unloading trucks and in the evening rode with his friend Lowell Roberts in Roberts' truck to his employer's camp about 12 miles from Gwinn. They had supper at the camp and later in the evening drove back to Gwinn and from there to Noreen's Gasoline Station, located about three and a half miles east of Gwinn, arriving there about 10:30 p.m.

On the evening in question the defendant trucking company through its driver, Lyle Legare, left Green Bay, Wisconsin, with a load of heater oil destined for the Standard Oil Company at Gwinn. The oil

weighed 16 or 17 tons, this together with the tank and trailer made a total weight of more than 25 tons. The distance from the front end of the tractor to the rear of the tank was over 30 feet. Traffic on M–35 was light on the night in question. The road was plowed 24 to 26 feet wide with snow banks along each side of the road 3 to 4 feet high.

Legare, the driver, had never been over this road before. As he approached the gasoline station from the east he began to wonder whether he had already gone through Gwinn so he decided to go into the station and find out where he was. In front of the station there is a large lighted Standard Oil sign extending from poles. The station is lighted and the pump is south of the sign. The driveway to the gasoline station is in the form of a semicircle. West of the station there appeared to Legare to be a clear spot where he could park his vehicle off the highway. As Legare approached the station he turned his vehicle so as to put it partly on the south side of the highway. The highway west of the station curves to the south so that a person located on the highway at the station can see a vehicle approaching from the west for more than 600 feet.

At this time the truck in which plaintiff was riding was approaching from the west. Roberts, the driver, did not see defendant's oil truck until he was 150 to 200 feet away. Plaintiff could not see the oil truck until he was 150 feet away from the oil truck and could not tell on which side of the road it was or whether it was moving. Plaintiff was not alarmed so he reached for a cigarette and when he looked up he saw that the lights of defendant's oil truck were right in front of him. The lights of the oil truck blinked once or twice and then came the crash.

As a result of the collision plaintiff suffered severe injuries. In October, 1947, he began the instant action. The cause came on for trial and at

the close of all testimony defendant made a motion for a directed verdict for the reason that defendant's driver was not guilty of negligence and plaintiff was guilty of contributory negligence. The motion was denied. The following special question was submitted to the jury: "Did the plaintiff do what a reasonably prudent man would do for his own safety during the last 600 feet of his ride with Roberts just prior to the accident?" The jury answered it, "yes" and returned a verdict for plaintiff in the sum of $25,000. Defendant, thereupon, filed a motion for a new trial which was denied.

Defendant appeals and urges that it was not guilty of any negligence that contributed to plaintiff's injury. There is evidence that the driver of defendant's oil tank entered into the south section of the road with the intention of turning into private property. After so doing, he determined that he could not make the turn in that position; and before he could return to his side of the road, the accident occurred. There is evidence that after he got into this position he did everything possible to avoid the accident by flashing his head lights to give warning of his position.

In *Ruby* v. *Buxton,* 305 Mich. 64, we said:

"We have held repeatedly that one who drives onto the wrong side of the road assumes the liability for so doing. *Winckowski* v. *Dodge,* 183 Mich. 303; *Black* v. *Parke, Davis & Co.,* 211 Mich. 274; *Sanderson* v. *Barkman,* 264 Mich. 152."

Under the circumstances of this case the negligence of defendant presented a factual question upon which the jury has spoken. We find no reason to disturb their finding of fact.

It is also urged that plaintiff was guilty of contributory negligence as a matter of law and defendant relies upon the following statement taken from

the dissenting opinion in *Mullen* v. *City of Owosso*, 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436) :

"It should not be inferred that a passenger can shelter himself behind the fact that another is driving the vehicle in which he rides, and relieve himself from his own personal negligence. What degree of care should be required in the selection of a driver, or in observing and calling attention to dangers unnoticed by the driver, must depend upon the circumstances of each case."

As well as the following statement approved by this Court in *Bricker* v. *Green*, 313 Mich. 218, 235 (163 A. L. R. 697) :

"Our holding herein should not be construed as excluding under appropriate circumstances the defense of contributory negligence on the part of the passenger, if relative to the cause of the accident the passenger failed to exercise such reasonable care and caution as he should have exercised under the circumstances.

"The following from 2 Restatement of the Law of Torts, p. 857, § 315, comment (b), is pertinent on this point:

" 'On the other hand, under the rule stated in section 495, the actor is guilty of contributory negligence if he fails to exercise an ability which he, in fact, has to control the conduct of any third person where a reasonable man would realize that the exercise of his control is necessary to his own safety. Thus, if the actor, while riding merely as a guest, does not warn the driver of a danger of which he knows and of which he has every reason to believe that the driver is unaware, by failing to do so he becomes guilty of contributory negligence which precludes him from recovery against another driver whose negligent driving is also a cause of a collision in which the actor is himself injured.' "

Plaintiff testified:

"I remember about the accident that we were coming around the curve and I noticed the lights. I didn't know whether they were on this car coming. And I reached in my pocket to get a cigarette or a match and when I turned and looked out the windshield we were right on top of it and I saw him blink his lights once or twice and then there was a crash. We were on our own side of the road. * * *

"On the night of this accident, I first saw the lights of the oil truck when I was about 150 feet away from the truck. At that time I reached for a cigarette or match. When I reached for the match I wasn't looking straight ahead. I may have looked down, but when I looked up, the lights were right on top of us and I saw them blink twice and then the crash and everything blacked out.

"I didn't think it was necessary while I was riding and before the crash that I should give any warning to Bob; I couldn't see anything that looked like trouble ahead at that time. I couldn't see past the oil truck when I first saw it. I couldn't tell on which side of the road it was. I couldn't say whether it was moving or not."

Lowell Roberts, the driver of the truck in which plaintiff was a guest passenger, testified:

"The oil transport was approximately 125 feet from me before it started to cut over onto my side of the road. When I saw it start to cut over I applied my brakes and turned to the right. * * *

"I saw the transport between 150, 200 feet. I started to apply my brakes at approximately 125 feet."

It seems apparent that whether Lowell Roberts did what any reasonably prudent man would have done when he applied his brakes and turned to the right as far as he could presents a factual question upon which the trier of the facts should deliberate. It is also a question of fact whether plaintiff should

have warned Lowell Roberts of the approaching danger. We cannot say that plaintiff was guilty of contributory negligence as a matter of law. The findings of fact by the jury are supported by competent evidence and are not against the preponderance of evidence.

Defendant urges that a verdict in the amount of $25,000 is excessive. At the time of the injury, plaintiff was 31 years of age and a married man with wife and 2 children. Prior to the accident, he was in excellent health and a capable workman earning 8 dollars per day. In addition to bumps, bruises and contusions he suffered a laceration on the left side of his face which extended from the temporal area down through the left cheek and into the border of the lip and severed the left facial nerve resulting in permanent paralysis of the muscles of the lower lip making eating difficult and embarrassing. The injury also produced a paralysis of the upper eyelid, the effect of which is that the eye will not blink or shut of its own power. He spent several days in the hospital and incurred expenses of $226.43 for hospital bills and $150 for doctors. He still suffers from headaches and dizziness. During these spells he cannot work. There was some testimony that traumatic epilepsy and mental instability might or could develop from the injury suffered. The disfigurement has caused plaintiff mental embarrassment and tends to make him shun social activities.

In *Cleven* v. *Griffin*, 298 Mich. 139, we said:

"There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous* v. *Conor*, 266 Mich. 397; *Weil* v. *Longyear*, 263 Mich. 22. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood* v.

*Earl Paige & Co.,* 239 Mich. 485.  We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. *Watrous* v. *Conor, supra; Michaels* v. *Smith,* 240 Mich. 671."

This language was cited with approval in *Gibbons* v. *Delta Contracting Co.,* 301 Mich. 638, and in *Alley* v. *Klotz,* 320 Mich. 521.

See, also, *Retan* v. *Railway Co.,* 94 Mich. 146; *In re Clark's Estate,* 234 Mich. 471.

The trial court indicated at the hearing for a new trial that the damages allowed were greater than he would have assessed, but did not state how much greater. As was stated in *Bathke* v. *City of Traverse City,* 308 Mich. 1, 16, "We do not substitute our opinion for that of the jury, especially where permanent injuries and pain and suffering are an important element of the damages."

Defendant urges that plaintiff injected the question of insurance into the trial.  The alleged misconduct occurred during the argument to the jury. However, it appears that defendant's counsel in examining Dr. Groos, a witness produced by plaintiff, brought up the subject of the Michigan compensation law.  We have examined the record carefully and conclude that neither attorney was proceeding in bad faith with a deliberate attempt to inject the question of insurance within the hearing of the jury.  See *Marth* v. *Lambert,* 290 Mich. 557.

It is also argued that there was prejudicial misconduct in that plaintiff's counsel deliberately kept the name of the Standard Oil Company before the jury.  There does not seem to have been any deliberate attempt to confuse the jury by inferring that the Standard Oil Company was the hidden defendant.  If there was confusion in the minds of the jurors, then defendant's counsel is at least partly to blame as he stated in his argument to the jury in sub-

stance: "No matter whether the Olson Transportation Company or the Standard Oil Company hauls its products into the Upper Peninsula the price of hauling those products is going to be reflected in the price which the Standard Oil Company charges for the product it sells here." In view of the above, we find no prejudicial error.

It is also urged as prejudicial error that plaintiff and his wife were urged to leave the courtroom by their counsel when Dr. Groos, plaintiff's witness, testified that plaintiff's injuries would be permanent. The trial court did not think such action on the part of plaintiff's counsel prejudicial. The court was in a better position than we are to observe the effect of such action upon the jury and we shall abide by his determination, with the notation that plaintiff's counsel could have accomplished his purpose by a less dramatic method.

Defendant urges that the trial court was in error in failing to give the following requested instruction:

"8. If you do find as claimed by the defendant that before Legare attempted to make the left-hand turn he looked in both directions and saw no one coming and that as a matter of fact the Roberts truck was around the curve so that it could not be seen by Legare and if you find that it appeared to Legare at the time he started to make the left-hand turn that he could do that in safety I charge you that it would then become the duty of Roberts to yield the right of way to Legare to complete his left-hand turn. This you may consider as bearing upon the duty of plaintiff to warn Roberts or request him to reduce his speed in accordance with the instructions that I have given you."

And in giving the following instructions:

"The plaintiff also in his declaration alleges some 17 or 18 kinds of negligence, but you have heard the testimony and you understand that the case now

hinges on the claimed negligence of the driver of the oil transport truck in driving his truck on the south side of the road or in the right of way of the log truck in which plaintiff was riding, and in turning to his left without giving proper warning and without using proper caution and failing to keep a look-out for possible approaching cars along the highway. Those are the principal allegations of negligence.

\* \* \*

"The law is not so severe as to absolutely forbid one from turning to the left across the highway. If it did that it would prohibit a man in the situation we have here, coming from the east, from driving into the gasoline station. Or to prohibit a man from driving into his own driveway if it happened to be on the left side of the road. So it does not forbid him to drive upon or across the off side, the left side of the road; but it requires that he shall first see that the movement can be made in safety. And that is the governing element.

"Now on this question of stopping or moving to the left side of the road, our courts have given this subject some construction, or these statutes some construction, and they have held that, assuring he can do so in safety and giving a reasonable warning one driver may stop his car to relieve another driver in distress or to assist an injured person lying on the highway, and the like. But you understand this whole thing;—the thing is that this driver must assure himself that he can make that movement in safety. That bears directly on the driver of the oil truck, in this case. Perhaps it is not necessary for me to tell you, but I do tell you, that not only does the defendant admit that this oil truck was in the position I have described but the defendant also admits that the driver of the oil truck was in its employ and in its truck with its consent and permission and that it is responsible for any damage that may be caused by his neglect, if any.

"There is another provision of the statute that rather indirectly bears in this case, and that is that

outside of the limits of any city or village it is unlawful to stop, park, or leave standing any vehicle on a main-traveled part of a highway when it is practicable to stop or leave such vehicle off said part of the highway. That bears somewhat on the situation here, as to the duty of this driver to not leave his oil truck upon the highway. Now so much I think I should say to you relative to the driving of the oil truck.    *    *    *

"A guest passenger riding with another person driving is not required to regulate the speed of the car, to watch the road, or to watch for trouble ahead, but any danger that he sees, or any danger which an ordinarily careful and prudent person would see under the same circumstances which he observes that the driver of the car does not see, or does not heed, it is his duty to warn the driver. It is summed up in one of the late cases that he would be guilty of contributory negligence if he, the guest passenger, fails to exercise any ability which he in fact has to control the conduct of the driver of the car. That depends upon the circumstances in every case. And you will have these rules in mind when you retire to your jury room. Violation of these provisions of the statute which I have now mentioned to you, by the defendant, would amount to negligence. That is, if he made those movements with which he is charged and admits making them without ascertaining that the movements could be made in safety, it would be negligence."

Requested instruction No. 8 is based upon the assumption that Legare could make the left-hand turn in safety. Legare testified: *"Q.* And you were not certain when you turned in you could make that turn in safety; were you? *A.* No." In view of this question and answer, the trial court was not in error in failing to give the requested instruction.

In considering the charge as a whole, it is apparent that the trial court intended that the jury was to consider whether the driver of defendant's truck had

exercised the proper degree of care, under the circumstances, in turning onto the wrong side of the road. The jury was properly instructed that the degree of care required was high. The jury could not have construed the instruction as requiring a "guarantee" of safety, but only necessary and reasonable precautions.

Defendant also urges that the trial court was in error in giving the following instruction, as it bore a relationship of the cost of living to damages:

"Now in passing upon all of the plaintiff's losses, if you get to that point, you have the right to consider the cost of living today; what it may be a year from now; or 2 years from now; and allow such sum as in your good judgment will fairly and reasonably compensate the plaintiff for the damages he has suffered."

In fairness to the trial court we quote the balance of the charge:

"Now you have the right to consider that he may die soon, or he may live a long time. The plaintiff has offered in evidence what we call the mortality tables, or tables of expectancy of human life; and they show that a man, aged 31 years, has an expectancy of life of about 34 years more. That is not binding upon you. That is just to aid you in using your good judgment on the probabilities of the future. You have the right to consider that the plaintiff, if you allow him anything, may make very much of a recovery and be able to work either at the work he has done in the past and has been in the habit of doing, or other work, and you have the right to consider that possibly he may never be able to work. Now the court cannot give you any rule for determining the plaintiff's damages. That is entrusted to you and on which you will use your good common sense as every-day people. Applying what you would ordinarily anticipate the plaintiff's condition along

through the years. Now that is a matter that is entirely in your hands. Nothing that I have said should give you the least concern as to what, if anything, you should allow this plaintiff. I wouldn't have any right to tell you that if I had an opinion and tried to tell you, and by the same token you will carefully consider the evidence and if you find for the plaintiff you will allow him such amount as in your good judgment based on the evidence and the natural inferences to be drawn from it is fairly and reasonably due him. You will not be governed in any sense by what an attorney tells you he wants, or what an attorney tells you he does not want to pay. That is not for the attorneys to say. That is for you."

In construing a charge, it must be considered in its entirety and isolated excerpts which might be erroneous in themselves will not require reversal unless prejudicial. See *Daigle* v. *Berkowitz,* 273 Mich. 140. After careful review of the entire charge on this issue, we are satisfied that the jury was not misled on the issue involved and defendant was not prejudiced by the charge given.

It is also urged that the verdict is contrary to the great weight of the evidence. We have examined the record carefully and conclude that there was substantial and competent evidence presented which supports the verdict of the jury.

The judgment is affirmed, with costs to plaintiff.

SHARPE, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.