LOWRY v. LYLE.

1. LIFE ESTATES—LIFE TENANT'S DEFAULT—EFFECT.
    A life tenant may not change his estate to one in fee by proceedings growing out of his own default.

2. SAME—DEFAULT—FORECLOSURE—DEED TO LIFE TENANT AFTER FORECLOSURE RESTORES LIFE ESTATE.
    Even if a life tenant and the remaindermen were disseized by sale under lien foreclosure proceedings, where the purchaser at said sale afterwards deeded to the life tenant, the life estate and the estate in remainder were thereby restored.

3. SAME — WILLS — REMAINDERMEN NOT CHARGED TO MAKE PAYMENT WHERE OBLIGATION PLACED UPON LIFE TENANT.
    Where a will gave a lien on land to secure the payment of a bequest, and expressly placed the obligation upon

On estoppel of remainderman by consenting to conveyance of fee by life tenant, see note in L. R. A. 1918D, 441.

the life tenants to pay the same, the duty to pay rested upon them, and the remaindermen were not charged to make such payment.

4. SAME—WILLS—DEFAULT IN PAYMENT OF LEGACY—EFFECT ON LIFE TENANT.

The terms of a will making a life estate primarily liable for the payment of a bequest prevented the life tenant from ever accomplishing more than restoring his life estate in purchasing title acquired under decree based on his default in payment of the bequest.

5. SAME—DEED TO LIFE TENANT AND WIFE—RIGHTS OF WIFE.

The deed from said purchaser at foreclosure sale to the life tenant and his wife conveyed to the wife no rights apart from the life estate of her husband.

6. SAME—REMAINDERMEN—ADVERSE RIGHTS.

The life tenant did not and could not acquire any adverse rights against the remaindermen, nor could any one claiming title from him do so, or hold adversely to the remaindermen before the end of the life estate.

7. SAME—ADVERSE POSSESSION AGAINST REMAINDERMEN.

Adverse possession by or under the life tenant did not commence to run against the remaindermen until their right of entry and possession accrued at the death of the life tenant.

8. SAME—POSSESSION OF LIFE TENANT NOT ADVERSE TO RIGHTS OF REMAINDERMEN.

The possession of the life tenant is consistent with and not adverse to the estate in remainder, and in contemplation of law is the possession of the remaindermen, who have no right of entry and cannot bring an action for the possession until the termination of the life estate.

9. SAME—GRANTEE OF LIFE TENANT ACQUIRES ONLY LIFE ESTATE.

The grantee of the life tenant acquired no more than his grantor's life estate, although conveyance was by warranty deed purporting to convey the fee; nor could he acquire any greater rights by redeeming from the foreclosure of a mortgage given by the life tenant, since the obligation was that of the life tenant and not that of the remaindermen.

10. REMAINDERS—LIFE TENANT MAY NOT DEFEAT ESTATE IN REMAINDER.

Under 3 Comp. Laws 1915, § 11550, an estate in remainder,

whether vested or contingent, may not be defeated by a life tenant or any one claiming under him.

11. EJECTMENT—LACHES—LIMITATION OF ACTION.
Laches, short of limitations fixed by law, are not available defenses in ejectment.

12. MORTGAGES—DEEDS—GRANTEE CHARGED WITH NOTICE OF RECORD OF GRANTOR'S ESTATE.
Mortgagees and grantees in purchasing from a life tenant are charged with notice appearing of record in the chain of title that the mortgagor and grantor had only a life estate.

13. LIFE ESTATES—EJECTMENT—REMAINDERMEN NOT OBLIGATED TO REPAY AMOUNT OF MORTGAGE PAID BY LIFE TENANT'S GRANTEES.
In ejectment by remaindermen, the court may not attach to plaintiff's right to recover a condition that they pay to defendants the amount paid by their grantor in redeeming a mortgage given by the life tenant to satisfy a bequest made a lien upon the land in case of the life tenant's default in paying it.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted January 31, 1924.    (Docket No. 156.) Decided April 10, 1924.

Ejectment by William Lowry and others against Edwin A. Lyle and others.    Judgment for plaintiffs on a directed verdict.    Defendants bring error.    Affirmed.

*Thomas J. Cavanaugh,* for appellants.

*David Anderson,* for appellees.

WIEST, J.    This is an action of ejectment, brought by remaindermen, to recover farm land occupied by defendants and their predecessors, under claim of title, for 33 years.    Plaintiffs had verdict by direction of the court with judgment thereon, and defendants prosecute review by writ of error.    The facts are not in dispute.

In 1872, James Lowry, Sr., owned a farm in Van Buren County. He died November 15, 1872, leaving a will bequeathing $1,300 to Mary Roberts, his granddaughter, and constituted the bequest a lien on the farm. He divided his farm in two parts, devised one part, including the land in suit, to his son George for life, with remainder to the children of George living at the time of George's death. The other part he devised in like manner to his son James, with remainder to his children.

The will provided:

"The above bequests to my said sons, James and George, are upon the express condition that the said James shall pay my said granddaughter, Mary Roberts, six hundred and fifty dollars in seven equal annual payments and interest annually until all be paid and upon condition that the said George shall also pay my said granddaughter, Mary Roberts, six hundred and fifty dollars in seven equal annual installments and interest thereon and that all my said land shall be subject to a lien for the said thirteen hundred dollars until the same shall be paid by my said sons."

May 6, 1874, Mary Roberts, by proper instrument, duly recorded, assigned her legacy to Milo D. Matteson, who, August 3, 1882, assigned the same to Jerome Coleman. May 25, 1883, Jerome Coleman filed a bill in the Van Buren circuit to foreclose the lien given with the legacy to Mary Roberts making the life tenants and all then existing remaindermen defendants. Defendants appeared and filed a demurrer. The demurrer was sustained, leave to amend granted, amendment made, new demurrer filed and overruled, guardian *ad litem* appointed for infant defendants and answer filed by their guardian *ad litem*. At that time (December 17, 1884) the remaindermen numbered eight, all infants. The case was heard and decree entered, reciting the legacy and lien under the will to Mary Roberts on the whole farm, found the amount

due, declared the lien, allowed payment on or before March 1, 1885, and in default thereof ordered a sale by a circuit court commissioner to satisfy the lien; sale to be in two parcels and that the life tenants and their children born before the date of the decree, or born thereafter, be forever barred from all "equity of redemption, right and interest in the said land under the aforesaid will of said James Lowry, deceased." When the bill was filed George Lowry had four children, all infants, but before the hearing he had another daughter born, and James Lowry had another son born.    The sale under decree took place June 1, 1886; Sela N. Thomas purchased and June 15, 1886, the sale having been confirmed by the court, he received a commissioner's deed.    May 29, 1886, three days before the sale, the life tenants, George and James Lowry, and as next friends for their respective children, the remaindermen, including the two born during the pendency of the lien foreclosure suit, filed a bill in the Van Buren circuit attacking the validity of the lien foreclosure decree and asked that sale thereunder be enjoined.    Hearing was had upon an order to show cause, an injunction was denied and prosecution of the case there ended.

When Sela N. Thomas purchased at the sale under decree he was administrator *de bonis non* of the estate of James Lowry, Sr., deceased.    July 20, 1886, Thomas deeded the land in suit to George and Sarah A. Lowry, George being the former life tenant and Sarah being his wife.    The same day, and probably to pay Thomas, George and Sarah A. Lowry gave Alvin and Theckla A. Bennett a mortgage for $700 on the premises.    This mortgage was foreclosed and a sheriff's deed given the Bennetts, March 1, 1888, and they, on January 2, 1889, quit-claimed to John Lyle, but on January 29, 1889, redemption was made.    December 29, 1888, George Lowry and his wife, Sarah, by warranty deed, conveyed the land in suit to John Lyle.    The title of

defendants comes in an unbroken line from John Lyle. George Lowry died May 20, 1915.

The circuit judge decided that defendants acquired no title by adverse possession; that right to possession did not accrue to the remaindermen until the death of their father, the life tenant, and, therefore, this suit was seasonably commenced. Plaintiffs are the remaindermen designated by class in the will of their grandfather, and plaintiff William, at the time of the hearing, was 49 years of age, Claude 40, May 44, Bertha 38 and Ethel 31. Bud Evans claims rights through Lillie B. Evans, formerly Lillie B. Lowry, who survived her father but died before suit, at the age of 46. The learned circuit judge, while of the opinion that Sela N. Thomas acquired a good title, yet held that when he deeded to George Lowry it thereby reinstated the life estate and the remainder as provided in the will.

At the trial defendants relied upon their chain of title and claimed adverse possession for over 30 years. Defendants insist their title should be declared good as against plaintiffs, assert good faith, plead their equities and also urge laches on the part of plaintiffs. Under the terms of the will George Lowry was a life tenant of the premises in suit and obligated to pay $650 of the bequest to Mary Roberts. If the chancery sale to Thomas cut off the life estate and the estate in remainder, and a deed from Thomas to a stranger would have passed good title, what was the effect of the deed from Thomas to George and Sarah A. Lowry? The rule preventing a life tenant from changing his estate to one in fee by proceedings growing out of his own default is well settled. The disseizin of the life tenant and the remaindermen, under the lien foreclosure proceedings, went for naught when the life tenant procured a deed from Thomas for he thereby restored the life estate and the estate in remainder. *Bowen* v. *Brogan,* 119 Mich. 218 (75 Am.

St. Rep. 387) ; *Lewis* v. *Wright,* 148 Mich. 290; *McCall* v. *McCall,* 159 Mich. 144; 21 C. J. p. 942.

The *status quo* was restored by the deed from Thomas to George and Sarah A. Lowry, and from that moment George Lowry was again life tenant and no more, and the rights of the remaindermen again were vested.      But it is said the lien to secure payment of the bequest to Mary Roberts was on all the property and paramount to the rights of the tenant for life and the remaindermen.      While the will gave a lien upon all the land it expressly placed the obligation upon the life tenants to pay the bequest.      The duty, therefore, rested upon George Lowry to pay one-half of the bequest to Mary Roberts.      The remaindermen were not charged to make such payment.

The terms of the will made the life estate primarily liable for the payment of the bequest to Mary Roberts and this prevented the life tenant, George Lowry, from ever accomplishing more than restoring his life estate in purchasing title acquired under decree based on his default.      *Allison* v. *White,* 285 Ill. 311 (120 N. E. 809).

The deed from Thomas to George and Sarah A. Lowry conveyed to Sarah no rights apart from the life estate of her husband.      *Blair* v. *Johnson,* 215 Ill. 552 (74 N. E. 747) ; see, also, *Myers* v. *Myers,* 186 Mich. 215.      The life tenant did not and could not acquire any adverse rights against the remaindermen, nor could any one claiming title from him do so, or hold adversely to the remaindermen before the end of the life estate.·      Adverse possession as to the rights of the remaindermen did not commence to run until their right of entry and possession accrued at the death of the life tenant.

As stated in *Allison* v. *White, supra:*

"The possession of land by a tenant for life cannot be adverse to the remainderman or reversioner, and the possession of a grantee of the life estate, even

under a deed purporting to convey the fee, cannot be adverse so as to set the statute of limitations in operation against the remainderman or reversioner. *Mettler* v. *Miller*, 129 Ill. 630 (22 N. E. 529) ; *Weigel* v. *Green*, 218 Ill. 227 (75 N. E. 913) ; *Schroeder* v. *Bozarth*, 224 Ill. 310 (79 N. E. 583) ; *Cassem* v. *Prindle*, 258 Ill. 11 (101 N. E. 241). The possession of the life tenant is consistent with and not adverse to the estate in remainder and in contemplation of law is the possession of the remainderman, who has no right of entry and cannot bring an action for the possession until the termination of the life estate."

When John Lyle purchased from George and Sarah A. Lowry he acquired no more than George's life estate. John Lyle, if he is the person who redeemed from the Bennett mortgage foreclosure, paid no obligation of the remaindermen but only the obligation of the life tenant. The remaindermen were not required to notice the mortgage given the Bennetts by the life tenant or the warranty deed given by George and Sarah A. Lowry to John Lyle, or heed the possession thereunder during the lifetime of George Lowry. Possession by John Lyle under such deed was not contrary to their estate in remainder, therefore not adverse for they had no right of entry or of possession during the existence of the life estate. The deed from George and Sarah A. Lowry gave John Lyle and his successors in title right to possession of the premises during the full run of the life estate but no longer. *Heilwig* v. *Nybeck*, 179 Mich. 292, 298 (Ann. Cas. 1915D, 356).

In *Bohrer* v. *Davis*, 94 Neb. 367 (143 N. W. 209, Ann. Cas. 1915A, 992), it was said (quoting from syllabus) :

"The conveyance of the life estate by the life tenant conveys all of the rights of the grantor, and the grantee holds the same estate held by the life tenant. The remainderman cannot declare and enforce a forfeiture of the life estate by reason of such conveyance, and his rights are not ordinarily affected thereby."

In *Jeffers* v. *Sydnam*, 129 Mich. 440, this court held that a life tenant cannot convey, even by warranty deed, any greater interest in the land than possessed by him, and under such a deed the grantee obtains no more than a life interest. The estate in the remaindermen was a vested one (*Keller* v. *Lees*, 176 Pa. St. 402 [35 Atl. 197]; see, also, *Ensign* v. *Dunn*, 181 Mich. 456, 462), and could not in any manner be defeated by the life tenant or any one coming in under him, and this would also be true if the estate be held a contingent remainder.

Section 11550, 3 Comp. Laws 1915, provides:

"No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizin, forfeiture, surrender, merger, or otherwise."

This statute was enacted to abrogate the common-law rule, under which it was possible for a life tenant to defeat a contingent remainder by a deed of feoffment with livery of seizin. See *People's Loan & Exchange Bank* v. *Garlington*, 54 S. C. 413, 426 (32 S. E. 513, 71 Am. St. Rep. 800); *Archer* v. *Jacobs*, 125 Iowa, 467, 482 (101 N. W. 195).

Defendants invoke the doctrine of laches. Laches, short of limitations fixed by law, are not available defenses in ejectment. It is true plaintiffs might have commenced suit at once upon the death of the life tenant, but commencing suit within the period allowed by law does not constitute unreasonable delay. No suit by plaintiffs could have been successfully brought to end defendants' possession during the life of George Lowry. The sale under the lien foreclosure decree resulted ultimately in no more than temporary suspension of the estates of the life tenant and the remaindermen, with revivor thereof when Thomas deeded to George and Sarah A. Lowry. The Bennetts,

in taking their mortgage, and John Lyle, in purchasing from George and Sarah A. Lowry, and all subsequent purchasers, were charged with notice of a life estate only in George Lowry, for it was of record in their chain of title.

Defendants claim plaintiffs should have tendered to them the amount paid by John Lyle in redeeming the Bennett mortgage inasmuch as that mortgage was given to raise the money to satisfy the lien of Mary Roberts.   We can attach no such condition to plaintiffs' right to recover in ejectment.   The case is a hard one but the law is plain.

The judgment is affirmed, with costs to plaintiffs.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.