## ORLOFF *v.* STOTT.

1. CORPORATIONS—POWER TO INCREASE CAPITAL STOCK GIVEN BY CHARTER OR STATUTE.

   A corporation has no power to increase its capital stock except in so far as power to do so has been given it by its charter or by statute.

2. SAME — AMENDMENT OF CHARTER INCREASING CAPITAL STOCK FUNDAMENTAL.

   An amendment to the charter of a corporation increasing the capital stock is a fundamental amendment.

[1]Corporations, 14 C. J. § 723; [2]Id., 14 C. J. § 725; 38 L. R. A. 616; 7 R. C. L. 203; 2 R. C. L. Supp. 312; 4 R. C. L. Supp. 475.

3. SAME—ASSENT OF TWO-THIRDS OF CAPITAL STOCK NECESSARY TO
   INCREASE CAPITAL STOCK.

   Under Act No. 232, Pub. Acts 1903, § 2, subd. 9 (2 Comp.
   Laws 1915, § 9018, subd. 9), a vote of two-thirds of the
   entire capital stock of a corporation is necessary to author-
   ize an increase in the capital stock.

4. SAME—LACHES.

   A minority stockholder who did all she could to have liti-
   gation started promptly to set aside an illegal increase
   in the capital stock of a corporation cannot be said to
   have been guilty of laches.

5. SAME—DELAY NOT IMPORTANT WHERE NOT PREJUDICIAL.

   Where the corporation was not prejudiced thereby, delay
   in bringing suit to set aside an illegal increase in the
   capital stock is not very important.

6. SAME—WAIVER—INTENTION—APPEAL AND ERROR.

   Where the record fails to show that a minority stockholder
   had any intention of waiving her right to complain of
   the illegal increase in the capital stock of a corporation,
   the question of waiver will not be considered, on appeal.

Appeal from Wayne; Merriam (De Witt H.), J.
Submitted February 3, 1927. (Docket No. 121.) De-
cided July 29, 1927.

Bill by Julia Stott Orloff against David E. Stott, the
Morehead Manufacturing Company and others to set
aside an increase of corporate stock in defendant cor-
poration. From a decree for plaintiff, defendants, ex-
cept Ernest C. Stott, appeal. Affirmed.

*Henry C. Walters (Walters, Hicks, Carmichael &
Head,* of counsel), for plaintiff.

*Douglas, Barbour, Brown & Rogers,* for appellants.

BIRD, J. The Morehead Manufacturing Company
gave notice to its stockholders, on January 9, 1920, of
the annual meeting, and recited therein that the stock-

---

[3]Corporations, 14 C. J. § 730; [4]Id., 14 C. J. § 746 (Anno); [5]Id.,
14 C. J. § 746 (Anno); [6]Appeal and Error, 4 C. J. § 2362.

holders would be asked to vote on an increase of the original stock. Its capital stock at that time was $45,000, divided into shares of $10 each. It sought to increase the stock to $125,000. At the annual meeting, January 13th, a vote was taken and 2,860 shares voted in favor of the resolution to increase. Notwithstanding the resolution failed to receive the 3,000 votes, or two-thirds of the capital stock, the resolution was declared carried. Plaintiff, who owned 328 shares of the stock, together with other stockholders, protested in writing that the increase was illegal, and shortly before this suit was commenced a demand was made by them on the defendant that the new shares be withdrawn and the capital stock readjusted on the old basis of $45,000. The hearing resulted in a decree declaring the attempt to increase the stock *ultra vires* because it lacked the requisite vote, and it was decreed that the excess stock should be canceled.

1. The important question raised is whether the increase of capital stock was legally made. The material part of the statute in force when the attempt was made provided:

"The amount of the capital stock and number of shares of every corporation organized under this act may be increased or diminished at any annual meeting of the stockholders, or at a special meeting expressly called for that purpose, by a vote of two-thirds of the capital stock of the corporation." Act No. 232, Pub. Acts 1903, § 2, subd. 9 (2 Comp. Laws 1915, § 9018, subd. 9).

It is argued by defendants that the statute should be construed to mean two-thirds of the shares present and voting rather than two-thirds of the entire number of shares of the corporation. The statute appears to be very plain that the capital stock of a corporation may be increased or diminished "by a vote of two-thirds of the capital stock of the corporation." If the legislature intended to require the assent of two-

thirds of the entire capital stock to increase or diminish the stock it could not have used more appropriate language to express it.

A corporation has no power to increase its capital stock except in so far as power to do so has been given it by its charter or by statute.    11 Fletcher on Corporations, § 3458.    And an amendment to the charter increasing the capital stock is a fundamental amendment.    Thompson on Corporations (Supp. 1922), § 375; *Johnson* v. *Tribune Herald Co.*, 155 Ga. 204 (116 S. E. 810) ; 1 Cook on Corporations (8th Ed.), § 285.

If counsel's argument be sound that the statute means two-thirds of the stock present and voting, 51 per cent. of the capital stock could work a fundamental change in the affairs of the corporation because the statute provides that a majority of the shares is a quorum for a stockholders' meeting.    Act No. 232, Pub. Acts 1903, § 10; *Hill* v. *Town*, 172 Mich. 508 (42 L. R. A. [N. S.] 799).    Before this statute was passed no increase could be made even with the consent of all the shares.    This, doubtless, appeared to the legislature an unreasonable restriction, and it, therefore, provided for an increase by a vote of two-thirds of the capital stock.    It is fair to assume that the legislature never intended this privilege could be exercised by 51 per cent. of the shares.

Analogous to this statute is the one which provides that one domestic corporation may sell its property and franchises to another domestic corporation "with the consent of three-fourths of its capital stock."    And yet if counsel's position be the correct one a sale could be brought about by 51 per cent. of the stock, and the requirement for the consent of three-fourths of the capital stock would mean nothing.    But for this statute, no sale could be made with the consent of the entire capital stock.    It is not probable that the legislature ever intended any such radical change as this would indicate.

As showing the view of the legislature on this question, it is provided in Act No. 232, Pub. Acts 1903, § 10 (2 Comp. Laws 1915, § 9026) :

"A majority of the directors of every manufacturing or mercantile corporation convened according to the by-laws, shall constitute a quorum for the transaction of business; and the stockholders holding a majority of the stock at any meeting of the stockholders shall be capable of transacting the business of that meeting, *except as herein otherwise provided.*"  *  *  *

There are only three other instances in the act to which the language "except as herein otherwise provided" could apply, and in each case it is with reference to the fundamental affairs of the corporation. This section clearly, in my judgment, shows that no stockholders' meeting could be legally held with less than a majority vote, and no stockholders' meeting to increase the capital stock could be legally held unless two-thirds of the issued shares were present and voting.

The State department with which the certificate of increase is required to be filed has always construed this statute to mean two-thirds of the shares issued, and it has refused to file certificates unless they showed that two-thirds of the shares issued consented to the change.    It was evidently the mind of the legislature, when these acts permitting a sale by three-fourths of the capital stock and the increase by two-thirds were passed, to relieve the severity of the rule then existing.    It requires much credulity to believe that the legislature intended to so amend the fundamental law of corporations that a sale of all the property and franchises could be made and the capital stock increased by the consent of 51 per cent. of the number of issued shares.    We cannot so hold.    We think the statute means just what it says, and that the number of shares cannot be changed unless two-thirds of the capital stock issued consents to it.

2. But counsel say even if they are wrong in their construction of the statute that plaintiff is not entitled to the relief which she prays because she did not file her bill promptly; that she is guilty of laches. It appears that plaintiff was opposed to the increase from the inception of the scheme. The proposal was not suggested because the company needed more money, but was suggested on account of Federal taxation. The stock at this time was worth seven and one-half times par. After the proceedings at the annual meeting plaintiff ordered her attorney to attack the proposition by court proceedings. He thought the matter could be adjusted by compromise. Accordingly much time was consumed in trying to agree on a price for the shares of the minority. Nothing finally came of this effort. Then her counsel advised her he could not represent her further on account of representing other members of the Stott family. She then employed the present counsel who filed the bill. The record shows that plaintiff did what she reasonably could to have the litigation started promptly.

Aside from this phase of the matter, we fail to see how the defendant has been prejudiced by the delay. It was not in need of funds with which to pay its debts or conduct its business. If the stock goes back to the old basis, 4,500 shares will own the same property and be liable for the same debts that the 12,500 shares now own and are liable for. If the company is not prejudiced the delay is not very important. *Plate* v. *Surety Co.,* 229 Mich. 482; *Bayley* v. *Friedberg,* 226 Mich. 125; *Sanders* v. *Campbell,* 231 Mich. 592; *Jacobs* v. *Schmidt,* 231 Mich. 200.

It is argued that plaintiff waived her objection to the illegality of the proceedings. We think it will not be necessary to consider this question, as the record does not show that plaintiff had, at any time, an intention to waive her right to complain of the illegal

proceeding. *Warren* v. *Crane,* 50 Mich. 300; *In re Clark's Estate,* 234 Mich. 471.

It is also argued that the case of *Ladies of The Maccabees* v. *Insurance Commissioner,* 235 Mich. 459, is conclusive of the main question. That case arose under a different statute. It considers members voting instead of shares of stock. That case was really decided on the theory that the insurance commissioner had no power to go behind the returns of the officers of the order, and the rule applicable to the vote of legislative bodies was applied. The rule in such cases is, and should be, different from one imposed by the statute as a prerequisite to the exercise of a right by a corporation to increase its capital stock.

We think the trial court reached the right conclusion and its decree is affirmed, with costs to plaintiff.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.