TRAY *v.* WHITNEY

OPINION OF THE COURT

1. EJECTMENT—NATURE OF ACTION.
   Ejectment is an action at law where one not in possession of property seeks to determine proper title to the property in possession of another.

2. QUIET TITLE—NATURE OF ACTION.
   An action to quiet title is an action in equity where one in possession of property seeks to clear title against the world.

3. EQUITY—LACHES.
   Laches is an equitable defense.

4. EJECTMENT—LACHES—AVAILABILITY OF DEFENSE.
   Laches is a defense available in an ejectment action, because the merger of legal and equitable actions to determine interests in land into a single action logically eliminates any reason to

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  25 Am Jur 2d, Ejectment § 1.
[2]  44 Am Jur, Quieting Title § 1.
[3, 5]  27 Am Jur 2d, Equity § 152 *et seq.*
[4, 6]  25 Am Jur 2d, Ejectment § 61.

prevent application of equitable defenses to what had previously been a legal action (MCLA § 600.2932).

5. EQUITY—LACHES—REQUIREMENT OF DEFENSE—CHANGE OF CONDITION.

Laches consists of more than the mere passage of time; laches necessitates the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the party asserting the defense of laches.

DISSENT BY O'HARA, J.

6. EQUITY—LACHES—INTEREST IN LAND.

*Doctrine of laches was properly applied in an action by a plaintiff, not in possession, to gain title to land where the property had been conveyed to plaintiff and other family members by the plaintiff's grandmother on the condition that the land would be reconveyed on the grandmother's request, the plaintiff's mother, signing as plaintiff's guardian, reconveyed the land to the grandmother in 1953, the plaintiff, who was 19 years old in 1953 knew, at the time, that the property had been reconveyed, the plaintiff's mother had never been appointed plaintiff's guardian, plaintiff was advised by attorneys in 1956, when plaintiff reached 21, of a possible interest in the land, the plaintiff did not commence suit until 1963, no reason, other than that the matter had been under investigation, was given for the delay, the defendant, the grandmother's niece, had taken the property from the grandmother by a conveyance made after the 1953 reconveyance, and the defendant since 1958 had maintained the property and has paid taxes on the property.*

Appeal from Jackson, John C. Dalton, J. Submitted Division 2 May 7, 1971, at Lansing. (Docket No. 10399.) Decided August 24, 1971.

Complaint by Edward S. Tray against Cathryn M. Whitney to determine interest in land. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Alvin G. Dahlem,* for plaintiff.

*Kelly, Kelly & Kelly,* for defendant.

Before: McGREGOR, P. J., and BRONSON and O'HARA,* JJ.

McGREGOR, P. J.  The dispute in this case involved the title to residential rental property, located in the City of Jackson, Michigan.  A review of the relevant history of the title discloses that, on February 3, 1948, Ida Tray, by quitclaim deed, conveyed the property in question through a straw man, to herself and to Sarah Tray, her daughter-in-law, Sally Ann Tray and Edward S. Tray, both minors, her grandchildren, as joint tenants with right of survivorship.  Through letters which are exhibits in this case, it appears that this gift by Ida Tray to the others was subject to an oral agreement that the property would be reconveyed to her at her request.  At all times relevant to this case, Sarah Tray, Sally Ann Tray, and the plaintiff were residents of the State of Wisconsin.  On December 29, 1953, Sarah Tray, individually, and as guardian of Edward S. Tray (plaintiff herein), at that time 19 years of age and a minor, and Sally Ann Tray, who had by that time attained her majority, attempted to convey all interests in the property in question back to Ida Tray.  No guardian for the minor Edward S. Tray was legally appointed, nor did he individually join in the execution of the deed.  This reconveyance appears to have been an attempted fulfillment of the oral agreement by his mother.

On January 9, 1954, Ida Tray, through a straw man, attempted to convey the property in question to herself, Jessie M. Whitney (Ida Tray's sister),

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and Cathryn M. Whitney (Jessie M. Whitney's daughter), as joint tenants with right of survivorship.

Ida Tray died on May 17, 1956. Jessie Whitney died January 12, 1958.

All deeds at issue in this case were properly recorded with the county register of deeds.

Testimony at trial indicated that the plaintiff first began investigating the possibility of his having an interest in the property in question in 1956. The complaint in this matter was filed April 23, 1963, asking the court to determine that plaintiff is the owner of said lands, alleging:

"Plaintiff, at the time of the execution of the deed referred to in the last preceding paragraph, was a minor, having been born on November 8, 1934; plaintiff did not join in said deed; in point of fact, the said Sarah Tray had never been appointed general guardian of plaintiff, or of his estate, either in the State of Wisconsin, then the residence of the said Sarah Tray and her son, the plaintiff, in the State of Michigan, or elsewhere; and the attempted conveyance of the interest of the plaintiff in said premises in such manner by the said Sarah Tray was a nullity and ineffectual to divest plaintiff of the interest created in him to said lands by virtue of the conveyance above set forth."

After much delay, trial in this action was held on August 6, 1968. It should be noted that the record and the trial court's opinion are barren of any prejudices resulting to the defendant by such delay, other than the finding that the defendant paid taxes and maintained the property, which she "rented out". On February 17, 1970, the trial judge issued an opinion deciding the matter on the basis of laches, which the defendant had asserted as an affirmative defense. The opinion of the trial court is based

solely on this issue and does not deal with any of the other issues raised in this matter. A motion for new trial was made and denied by the trial court.

The question before the appellate court is whether the trial judge properly applied the doctrine of laches in his decision.

Plaintiff cites nine issues on appeal. The cumulative result, basically, is that the doctrine of laches was inapplicable to the case at hand.

Defendant cites two issues, one being whether laches was properly applied, and the other dealing with whether the beneficiary of a gift can accept the benefits and reject the burdens of a contract. This second issue was not ruled on by the lower court and is not properly before this Court.

A review of the complaint indicates that it is a classical action for ejectment. The plaintiff is a party who is not in possession of property, who is seeking to determine proper title to the property in possession of another.[1] Ejectment is an action at law, as opposed to an action to quiet title, an action where one in possession of property seeks to clear title against the world, which is an action in equity. At common law, equitable defenses were not available in ejectment. *Paldi* v. *Paldi* (1893), 95 Mich 410. Laches is an equitable defense. In 1924, the Supreme Court of Michigan made the following statement with respect to a defense of laches in an action of ejectment:

"Defendants invoke the doctrine of laches. Laches, short of limitations fixed by law, are not available defenses in ejectment." *Lowry* v. *Lyle* (1924), 226 Mich 676.

The principle enunciated above, cited in *Lowry,* has never been repealed by a Michigan court.

---

[1] See 10 Michigan Law & Practice, Ejectment, § 1, pp 339–342.

Applying the principle stated above to the action at hand, the application of the doctrine of laches by the trial judge in this case was inappropriate, as the plaintiff brought his action within the 15-year limitation period, found in MCLA § 600.5801(4) (Stat Ann 1962 Rev § 27A.5801[4]). PA 1961, No 236, MCLA § 600.2932 (Stat Ann 1962 Rev § 27A-.2932) combined the two actions of ejectment and quiet title, and created a single action to determine interests in land. Subsection 5 of the statute states:

"Actions under this section are equitable in nature."

If all actions to determine title in land are equitable in nature under MCLA § 600.2932, it is questionable whether the principle that equitable defenses are not available in actions of ejectment still has viability. Apparently, this question has not been passed on by our Supreme Court. It would seem logical that the merger of law and equity eliminates any reason to prevent application of equitable defenses to what had previously been legal actions. Therefore, equitable defenses should no longer be inapplicable.

If the reasoning stated above is valid, this Court is then faced with the question of whether, on the merits, the trial judge properly applied the doctrine of laches.

It is well established that the doctrine of laches consists of more than the mere passage of time. In *Sloan* v. *Silberstein* (1966), 2 Mich App 660, our Court made the following statement:

"While laches is similar to statutory limitations, there is a substantial difference between them. Laches differs from limitations in that limitations are concerned with the *fact* of delay, laches with the *effect* of delay. Laches is concerned principally

with the question of the inequity of permitting a claim to be enforced and depends on whether plaintiff has been wanting in due diligence. Limitations are statutory, while laches is not. Laches applies only in equity, while limitations prior to January 1, 1963, apply only at law. Limitations are based on fixed time, while laches is not." 2 Mich App 676.

In the case of *Brydges* v. *Emmendorfer* (1945), 311 Mich 274, the Supreme Court discussed the elements of laches extensively:

"We are not in accord with defendants' claim that the trustee is barred by laches or statute of limitations from maintaining the suit. The statute of limitations does not control the question of laches in equitable actions.

" 'Time alone does not constitute laches, but there must have been a change of conditions which would render it inequitable to enforce the claim (21 CJ, p 212 *et seq.*), or a showing that the defendant was prejudiced by the delay. *Orloff* v. *Stott,* (1927), 239 Mich 563.' *Collins* v. *Lamotte* (1928), 244 Mich 504, 509.

" 'In *Sanders* v. *Campbell* (1925), 231 Mich 592, it was held that even where there was delay in asserting the right, that in itself did not constitute laches; instead the delay must have resulted in some prejudice to the party asserting laches which would make it inequitable to disregard the lapse of time and incidental consequences.' *Carey* v. *Lauhoff* (1942), 301 Mich 168, 175.

" 'Furthermore, laches is purely an equitable defense and lapse of time alone will not create it. There must be other circumstances than mere lapse of time that would make it inequitable to grant the relief sought.' *Kutschinski* v. *Zank* (1943), 307 Mich 260, 271, 272.

"There is no showing in this case from which an inference may be drawn that the defendants have

been harmed by any delay in bringing the suit to set aside the deeds.

" 'In *Carey* v. *Lauhoff* (1942), 301 Mich 168, the Court applied the rule laid down in *Sanders* v. *Campbell* (1925), 231 Mich 592, where it was held that, even where there was delay in asserting the right, that of itself did not constitute laches, but that it must appear that the delay resulted in some prejudice to the party asserting laches which would make it inequitable to disregard the lapse of time and the incidental consequences.' *Spencer* v. *Childers* (1943), 307 Mich 145, 148." 311 Mich at pp 279, 280.

Laches is not the mere passage of time, but is rather the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the defendant. Nowhere in the record of this case is there any indication of any change of condition caused by the passage of time which would make it inequitable to enforce this claim against the defendant. Defendant did not specifically allege any harm which stems from the passage of time that would result from the enforcement of the claim against her. Her affirmative defense merely sets out the defense of laches without any specificity. A review of the transcript in this matter does not reveal any grounds other than the mere passage of time upon which the defense of laches is asserted, and a reading of the opinion of the trial judge shows that he has not stated any grounds upon which laches may be founded other than the mere passage of time. No other inequities can be found in the record. From this lack of inequities other than the passage of time, it is clear that the trial judge has inappropriately applied the doctrine of laches.

Reversed and remanded to the trial court for further action not inconsistent with this opinion.

This opinion is not to be construed as deciding which party is legally entitled to said property or the interest therein. Costs to plaintiff.

B<small>RONSON</small>, J., concurred.

O'H<small>ARA</small>, J. (*for affirmance*). The litigation at hand arises from a dispute over title to residential property in the City of Jackson, Michigan.

Examination of the history of the title, insofar as relevant to this case, discloses the following facts:

On February 3, 1948, Ida Tray conveyed the property in question by quitclaim deed through a straw man to herself, Sarah Tray, her daughter-in-law, Sally Ann Tray, and Edward S. Tray, both minors, her grandchildren, as joint tenants with right of survivorship. Although the conveyance was absolute in form, letters introduced in evidence at the trial indicate that the gift by Ida Tray to the other parties was subject to a condition that the property would be reconveyed to her at her request. Thereafter, on December 29, 1953, the aforementioned Sarah Tray, individually, and as guardian of Edward S. Tray, at that time 19 years of age and a minor, and Sally Ann Tray, who had by that time attained the age of majority, attempted to convey their interest in the property back to Ida Tray. At no time did the minor Edward S. Tray join in the conveyance, nor was the deed executed in his name by a duly-appointed guardian.

Subsequently, on January 9, 1954, Ida Tray, through a straw man, attempted to convey the property to herself, Jessie M. Whitney, Ida Tray's sister, and Cathryn M. Whitney, the defendant in this cause, as joint tenants with right of survivorship.

Ida Tray died on May 17, 1956. On January 12, 1958, Jessie M. Whitney died. As a result, the defendant appeared to hold record title to the property in fee simple absolute.

Plaintiff, Edward S. Tray, thereafter began an action in April, 1963, to determine interest in the land, praying that the court determine that he was the owner of the property in question and, further, that defendant be required to account for the reasonable value of the use of the premises, along with the rents and profits which had accrued while defendant was in possession.

From the judgment in favor of defendant, and the denial of plaintiff's motion for a new trial, plaintiff appeals of right.

Numerous assignments of error have been made by the parties but, in essence, the central issue relates to whether the doctrine of laches was properly invoked by the trial court.

In view of the merger of law and equity in this state, and the supplanting of the hitherto separate actions of ejectment and to quiet title by a single action to determine interests in land, expressly declared to be equitable in nature,[1] there appears to be little reason to determine the question of whether the equitable defense of laches may be interposed to an action formerly cognizable only at law. Since plaintiff has successfully petitioned the chancellor to assume jurisdiction over his cause, he should not be heard to complain at this late date.

Contrary to the assertion of plaintiff that the record does not evidence any grounds upon which laches may be founded, other than the passage of time, the trial court detailed specific findings as to why plaintiff's lack of diligence precluded granting the relief sought.

---

[1] MCLA § 600.2932(5) (Stat Ann 1962 Rev § 27A.2932[5]).

I quote from the well-reasoned opinion of the learned trial judge in relevant part:

"The plaintiff herein knew in 1953 when he was 19 years of age that his mother, Sarah Tray, deeded the property in question back to Ida Tray and in said conveyance signed as his guardian. This was discussed by him with his mother in connection with giving the quitclaim deed to Ida Tray and Ida requesting it because she needed money for medical expenses.

"When Ida Tray died on May 17, 1956, plaintiff was 21 years of age, having reached his majority on November 8, 1955.

"He was contacted by a firm of attorneys in Tennessee in November, 1956, advising that he had a possible interest in the property and requesting if he wished to pursue his claim thereto. He retained counsel in Tennessee to represent him in this matter in December, 1956. The matter was then referred to his present counsel and, other than the fact that he spent two years in military service, no reason is advanced for his not commencing suit to assert his claim until April 23, 1963, other than that the matter was being investigated.

"As stated aforesaid, Ida Tray died May 17, 1956, and Jessie Whitney died January 12, 1958. Since the death of both, the defendant and crossplaintiff has paid the taxes and maintained the property in question which has been rented out by her, which facts were known or should have been known by the plaintiff if he was really interested in claiming this property as his own.

"All of the testimony hereinbefore referred to is relevant and admissible for consideration by this court on the question of laches.

"Actually, what we have here is an effort by this plaintiff to upset a conditional family agreement as to this property (which was later reputed by deeds of conveyance, creating a joint tenancy with right of survivorship, as evidenced by exhibits 7 and 8),

which conditional family agreement was obviously entered into to avoid probate as to the property in question. Although the plaintiff was not an actual participant in the conditional family arrangement, the plaintiff did have actual knowledge of the same, which fact may be considered by this court.

"There was a delay in pressing this claim of plaintiff for seven years and five months after he reached majority and for six years and four months after retaining counsel. The fact that he was in military service for two years is not being overlooked, but it has a rather hollow ring under all the circumstances.

"If this plaintiff was not in agreement with the termination of the conditional family agreement aforesaid, he was under a duty and obligation to assert and press his claim within a reasonable time after the disability of infancy ceased.

"Laches is an affirmative defense which depends not merely on lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to a dilatory plaintiff. See *Lewis* v. *Poel* [1965], 376 Mich 167.

"For this plaintiff not to assert his claim to this property for the period which he did while someone else used this property, paid the taxes on it, and maintained it, makes him guilty of unconscionable and inexcusable delay and, hence, guilty of laches which bars his now asserting his claim. In making this statement, the court is aware of the fact that he was not a resident of the State of Michigan.

"This plaintiff is an intelligent individual who at the time of trial of this matter on August 6, 1968, had been employed as a sales engineer by an engineering company in Chicago, Illinois, for a period of five years. If his desires with reference to pressing this claim were not carried out by his attorneys, then he was under a duty and obligation to see that his desires were carried out."

For the reasons here set forth, I conclude that the trial court properly applied the ancient doctrine of laches to deny plaintiff relief under circumstances which otherwise would bring about an unjustifiable hardship upon the defendant, who had reasonably relied upon the apparent state of title and the acquiesence therein by plaintiff. The judgment below finding title in the defendant should accordingly be affirmed.

Costs to the defendant.