## VAN ANTWERP v CITY OF DETROIT

1. MUNICIPAL CORPORATIONS—EMPLOYMENT—RETIREMENT BENEFITS—
   SUBSTANTIVE CHANGES.

   Retirees from public municipal employment have rights, albeit
   not vested contract rights, in functioning pension plans which
   warrant recognition until altered by the governing authority's
   appropriate action; while municipalities did have the power to
   revise, increase, diminish, or revoke pension benefits prior to
   the effective date of the 1963 Constitution, such substantive
   changes should be based upon charter amendment, which
   affords the pensioners affected minimal procedural protection of
   their rights since municipalities do not have unfettered power
   to alter pension plans without such amendment, and an at-
   tempt by a municipal corporation to terminate a retiree's
   pension benefits pursuant to a publically undeclared retirement
   board policy that benefits not be paid while the retiree was
   employed by the municipal corporation as a councilman with-
   out an enacted charter amendment so providing is ineffective.

2. MANDAMUS—MUNICIPAL CORPORATIONS—RETIREMENT BENEFITS.

   Mandamus is the appropriate remedy to enforce a clear legal
   duty of a municipal corporation to pay retirement benefits.

3. MUNICIPAL CORPORATIONS—EMPLOYEES—RETIREMENT BENEFITS—
   WAIVER.

   Waiver means a voluntary and intentional relinquishment of a
   known right or known advantage; a municipal employee-re-
   tiree's signed waiver of retirement benefits was not a voluntary
   relinquishment of a known right where the retiree after being
   elected a councilman of a city was advised that it was against
   the policy of the city to carry a person on the retirement rolls
   while simultaneously paying him a salary and was told that it
   was necessary to return the pension benefits paid and sign a
   waiver of benefits so long as he continued to occupy the office of
   councilman, where he was further advised that it was the city's

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 60 Am Jur 2d, Pensions and Retirement Funds §§ 39–72.
[4] 5 Am Jur 2d, Appeal and Error §§ 762, 764.

policy to request the signing of a waiver in such cases to provide a definite record for the pension files, notice of the reasons for revocation of the benefits, and notice of the time at which the benefits would be reinstated, and where the record does not support a conclusion that the retiree understood or had reason to believe that he possessed rights that need not be waived.

4. EQUITY—LACHES—APPEAL AND ERROR.

Time alone does not constitute laches, but there must have been a change of conditions which would render it inequitable to enforce the claim or a showing that the defendant was prejudiced by the delay; thus where a city retiree claimed retirement benefits from the date when he was elected a city councilman and the city improperly refused to pay the benefits because of its claimed policy that a retiree could not draw benefits while drawing a salary from the city, the trial court's judgment of a finding of laches for a portion of the time of the claim will be modified by the Court of Appeals where neither the record nor stipulation of facts support the conclusion that the conditions had so changed that enforcement of plaintiff's claim yields an inequitable result and where there is no evidence that the city was prejudiced by the delay in the claim.

Appeal from Wayne, John M. Wise, J. Submitted Division 1 December 6, 1972, at Lansing. (Docket No. 13160.) Decided June 25, 1973. Leave to appeal denied, 390 Mich 781.

Complaint for mandamus by Philip J. Van Antwerp against the City of Detroit and the Board of Trustees of the Policemen and Firemen Retirement System for restoration of plaintiff to the pension rolls of the retirement system and for payment of past benefits. Mandamus granted. Defendants appeal and plaintiff cross-appeals. Affirmed but judgment modified.

*Philip J. Neudeck* and *Frank P. Neaton,* for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and

*Nick Sacorafas* and *Ronald Zajac,* Assistants Corporation Counsel, for defendants.

Before: Bronson, P. J., and R. B. Burns and Danhof, JJ.

Bronson, P. J. The trial court ordered that mandamus issue against defendants for the payment of pension benefits to plaintiff from March 30, 1965, to the present with interest therefrom until paid and for benefits accruing in the future. From this decision defendants sought leave to appeal. This Court granted leave and ordered a stay of proceedings below to consider the following issues:

(1) Did defendants have the right to terminate pension benefits awarded pursuant to the City of Detroit Policemen and Firemen Retirement System upon plaintiff's election to the Common Council of defendant city?

(2) Is a writ of mandamus an appropriate remedy for the enforcement of plaintiff's pension rights?

(3) Did plaintiff voluntarily and knowingly waive his right to past, present, and future pension benefits?

(4) Did the trial judge commit reversible error by finding plaintiff guilty of laches and limiting his recovery to a period commencing March 30, 1965 rather than April 1, 1963, the date plaintiff was elected to the Common Council of defendant city?

The parties have presented this Court with the following stipulation of facts:

"Plaintiff became a member of the Detroit Police Department June 1, 1937, and after serving continuously for 25 years, retired June 2, 1962, with the rank of Inspector. The Policemen and Firemen Retirement System originally came into existence July 1, 1941,

* * * and plaintiff, at all times during his membership in the Detroit Police Department, contributed his full share into the pension fund established by the retirement system. From the date of his retirement, plaintiff was paid all pension benefits until on or about April 8, 1963.

"April 1, 1963, plaintiff was elected by the voters of the City of Detroit as a member of the Common Council of said city, and was sworn into said office April 6, 1963. Plaintiff was paid his regular pension payment for the month of April, 1963, but on the first day of May, 1963, demand was made upon him by defendants to return the sum of $178.57, which sum represented his April, 1963 pension payment, for the stated reason that he was not entitled to the pension payment while receiving compensation as a member of the Common Council. Said sum of $178.57 represents the difference between the monthly check and the annuity payment portion of $28.13.

"Plaintiff has received (and continues to receive) a monthly annuity of $28.13 since June 2, 1962, the date of his retirement. Plaintiff was advised by Mr. Lyons that it was against the policy of the city (on public policy grounds) to carry a person on the retirement rolls and pay him a pension while at the same time carrying a man as an active employee and paying him a salary. Mr. Lyons was told by Mr. Pelham, City Controller, (that to be consistent with the above policy) it was necessary for him to get the pension check back received by Councilman Van Antwerp, and for him to sign a waiver of his pension payments so long as he continued to occupy the office of councilman. Thus, plaintiff was advised that he would not receive his pension, except for the annuity payment of $28.13 which he would receive while he received a salary as councilman.

"Mr. Lyons further advised plaintiff that it was the city policy to request the signing of a waiver in such cases to provide a definite record for the pension files, and to provide definite notice to the retirant of the reasons why the pension would be withheld and to indicate when the pension would again continue.

* * *

"The waiver was presented to plaintiff by Mr. Fred Lyons, in Lyons' office, on May 1, 1963, and was signed by plaintiff to be effective April 8, 1963, and witnessed by Mr. Fred Lyons and Mr. Peter Zylich at that time and place. Neither the Corporation Counsel nor any of his staff was present at the signing of the waiver. Furthermore, neither the Corporation Counsel nor any of his staff directly advised plaintiff that he was required to sign a waiver. Plaintiff read said document prior to signing. On May 1, 1963, plaintiff returned to defendants the sum of $178.57.

" * * * [I]n a letter dated September 4, 1970, plaintiff requested the Common Council of the City of Detroit to take action on his request for payment of pension. September 14, 1970, the Corporation Counsel of the City of Detroit gave a written opinion to the Common Council on its request * * * pointing out that the Common Council had no jurisdiction in this matter.

"December 28, 1970, plaintiff * * * demanded of defendant, Policemen and Firemen Retirement System, that it make immediate payment to plaintiff of all pension benefits that had accrued to him since on or about April 6, 1963. January 15, 1971, defendant, Board of Trustees, Policemen and Firemen Retirement System * * * denied plaintiff's request for payment of his pension benefits. Plaintiff has served continuously as a member of the Common Council since April 1, 1963 to date."

The trial judge by written opinion ordered that mandamus issue for the payment of pension benefits commencing March 30, 1965, and benefits accruing in the future. This judgment was subsequently modified to include interest from that date until the benefits were paid and restore plaintiff to the rolls of defendant's retirement system.

I. *Did defendants have the right to terminate pension benefits awarded pursuant to the City of Detroit Policemen and Firemen Retirement*

*System upon plaintiff's election to the common council of defendant city?*

Defendants contend that plaintiff had no vested right to pension benefits from the Policemen and Firemen Retirement System prior to the effective date of art 9, § 24 of the 1963 Michigan Constitution, which changed the character of pension plans and retirement systems to "contractual obligations".[1] Relying upon *Brown v Highland Park,* 320 Mich 108 (1948), and *Retired Policemen and Firemen of the City of Lincoln Park v Lincoln Park,* 6 Mich App 372 (1967), defendants claim unfettered control in the administration of their retirement system. Although these decisions permitted the cities involved to modify their retirement systems with resulting adverse effect upon plaintiffs-retirees, they do not provide defendants with the broad power they seek herein.

In *Brown v Highland Park, supra,* the city had adopted a *charter amendment* which reduced the pension benefits to recipients in some cases. Relying upon quoted precedent, the *Brown* Court concluded that the pension system created no contract in which the recipients had vested rights. Since each plaintiff entered the fund with knowledge that it could be amended and received no express provision that the pension represented an irrevocable portion of their salary, the *Brown* Court held that the city had the power to amend or terminate the fund at will.

This Court in *Retired Policemen and Firemen of*

---

[1] For cases discussing the difference between a retiree's status vis-a-vis the pension system before and after the 1963 Constitution see *Retired Policemen and Firemen of the City of Lincoln Park v Lincoln Park,* 6 Mich App 372 (1967), and *Theisen v City of Dearborn,* 5 Mich App 607 (1967), *aff'd,* 380 Mich 621 (1968) (dissenting opinion by Judge HOLBROOK).

*Lincoln Park v Lincoln Park, supra,* relied upon the *Brown* case for the proposition that municipal employees possessed no vested rights in the challenged pension plan prior to the effective date of the 1963 Constitution. Like *Brown,* the facts of this case provide an insight into the underpinnings of the decision. The City of Lincoln Park created a pension plan by a charter amendment in 1943. In 1957, the city changed the formula for awarding pension benefits by *charter amendment* which reduced the annuities payable to the petitioner. Although the Court recognized the defendant city's power to alter the pension plan in the *Lincoln Park* case, it reached this decision upon a factual background in which the defendant city's modifications were accomplished by *charter amendment.*

Herein lies the distinction controlling the instant case. While defendants possess the power to revise, increase, diminish, or revoke pension benefits prior to the effective date of the 1963 Constitution, such changes must be effected by charter amendment. This conclusion is based upon the fact that the retirees have rights in functioning pension plans, albeit not vested contract rights, which warrant recognition until altered by the governing authority's appropriate action. Our characterization of plaintiff's interests as rights implies some minimal procedural protection and is sustained by prior case law.

In *O'Connell v Dearborn Police and Fire Pension Board,* 334 Mich 208 (1952), the Court issued a writ of mandamus directing that pension benefits be paid since plaintiffs had completed all the prerequisites of eligibility. The clear import of this decision is that absent the existence of an emergency or unusual circumstances, petitioners receive an enforceable right upon completing the

prerequisites of eligibility for pension benefits.[2] The *Brown* Court characterized the retirees' interests in the pension fund as follows:

"At best plaintiffs in this case have an expectancy based upon *continuance of existing charter provisions.*" *Brown, supra,* p 114. (Emphasis added.)

The significance of this language is found in its recognition that the retirees' interests flow from the *existing* charter provisions. The permissible inference created by this language is that substantive changes in the retirement system should be based upon charter amendments revising the nature of existing and controlling charter provisions. This inference is supported by the *O'Connell* Court's following statement:

"If, in addition to the 20 or more years of creditable service, a policeman or fireman must also meet some other requirement not mentioned in the retirement act, then, in reason, *appropriate language to that effect should be added* to the aforementioned policemen's and firemen's retirement act. *In the absence of such language, the board cannot assume that such exists nor can the court supply the deficiency.*"[3] (Emphasis added.) *O'Connell, supra,* p 213.

The *O'Connell* Court has adopted a reasonable and just position which balances the parties' respective interests.

The following quotation from 162 ALR 1469, p

[2] The Attorney General, relying upon the *O'Connell* case, described petitioners as possessing *matured* or *vested* rights in the continuation of their status as pensioners. However, these rights were described as not extending to a continuation of the same *rate* of pension benefits. 1 OAG, 1957, No 2965, pp 219–220 (May 1, 1957).

[3] *See, also,* 2 OAG, 1956, No 2472, pp 387, 389 (July 13, 1956) (where the Attorney General stated: "Subsequent to retirement, the pensioner continues to have a *fully ripened legal right* to continue to receive all payments due to him *under the plan as it operates").* (Emphasis added.)

1469, cited by plaintiff, applies these principles in the context of the specific problem at hand:

"Hence, where the statute under which the pension is granted provides for forfeiture or suspension of a retirement pension granted to a public officer or employee in case he should accept employment by the Federal government, the state, or one of its political subdivisions, such statute will effectively forfeit or suspend the payment of the pension in case the contingency happens. On the other hand, *where the statute does not contain such a clause,* the acceptance of public employment by a retired public servant *has no effect whatsoever on his pension right,* unless he is found to have waived such right. * * * "

Significantly, this language was cited with approval by the Attorney General with regard to the same problem created by retired legislators' returning to office to support his conclusion that:

"[I]n my opinion there is no provision in the legislative retirement act which would have the effect of denying a retirement allowance to a legislator who has become a retirant and thereafter returned to the legislature." OAG, 1967–1968, No 4365, p 61 (June 26, 1967).

While the municipalities governing retirement systems have the power to modify their plans at will, they must do so by an appropriate charter amendment which affords the pensioners affected minimal procedural protection of their otherwise mature rights. Since both the *Brown* and *Lincoln Park* decisions were predicated upon modifications pursuant to charter amendment, they do not stand for the proposition that municipalities have unfettered power to alter pension plans without such amendment.

In the present case defendants attempted to

terminate plaintiff's pension benefits pursuant to a publicly undeclared board policy[4] that benefits not be paid while plaintiff was employed by defendant as a councilman. The trial judge in his able opinion stated:

"It [the *Brown* case] merely reinforced the general rule earlier stated that public pensions are controlled by the statutes and charter in force at the time and if these statutes and charters are changed the pensions accruing thereunder must conform to the statute or charter in existence at the time of retirement."

Defendants' retirement system is controlled by Title 9, chapter 7 of the Charter of the City of Detroit. This charter provision is devoid of any section or language modifying the pension plan in the manner sought by defendants' board policy. A reading of article 6, § 2.1 indicates that eligible retirees *shall* receive pension benefits. Since this right to an annuity is not modified or restricted by further language in the charter[5] or a subsequently enacted charter amendment, we conclude that defendants' policy was not properly implemented so as to restrict plaintiff's right to receive benefits. Defendants cannot adversely affect plaintiff's matured rights without this indispensable safeguard.

---

[4] The validity of this board policy is questionable because of its seemingly discriminatory application. The trial judge found that a retiree would continue to receive pension benefits if he was employed by defendant in another capacity:

"The defendants concede that City of Detroit retirees who are members of the Policemen and Firemen retirement system may be legally employed in *any other city* or any county or state or private *employment and still receive* the City of Detroit *pension checks.*" (Emphasis added.)

[5] *See* Detroit Charter, Title 9, ch 7, art 4, § 3. *Contrast, Baumgartner v Michigan Public School Employees Retirement Fund Board,* 327 Mich 36, 40 (1950) (where specific charter language prior to the 1947 amendment provided that benefits shall cease upon reemployment).

II. *Is a writ of mandamus an appropriate remedy for the enforcement of plaintiff's pension rights?*

Defendants allege that mandamus is an inappropriate remedy since it has no clear legal duty to grant plaintiff's request for benefits. This argument is based in part upon defendants' assertion that plaintiff waived his right to receive pension benefits. We find that the question of waiver (Issue III) affects only the application of what is otherwise an appropriate remedy. Plaintiff possessed a matured right to a pension which was not modified by charter amendment. Unless this right is subsequently deemed waived, defendants have a clear legal duty to pay the requested pension benefits. Mandamus is the appropriate remedy to enforce this clear legal duty. *O'Connell v Dearborn Police and Fire Pension Board, supra.*[6]

III. *Did plaintiff voluntarily and knowingly waive his right to past, present, and future pension benefits?*

Defendants allege that plaintiff's signed waiver of past, present, and future pension benefits requires a reversal. It is a fundamental principle of law that a waiver means a voluntary and intentional relinquishment of a *known right* or *known advantage. Bailey v Jones,* 243 Mich 159, 162 (1928); *Couper v Metropolitan Life Insurance Co,* 250 Mich 540, 544–545 (1930); *Book Furniture Co v Chance,* 352 Mich 521, 526 (1958).

A careful reading of the stipulated facts indicates that plaintiff was advised that it was against

---

[6] *Cf. Campbell v Judges' Retirement Board,* 378 Mich 169 (1966); *Dearborn Fire Fighters Ass'n v City of Dearborn,* 323 Mich 414 (1949). *See, also, Pillon v Attorney General,* 345 Mich 536 (1956).

the policy of the city to carry a person on the retirement rolls while simultaneously paying him a salary. Plaintiff, therefore, was told that it was necessary to return the pension benefits paid and sign a waiver of benefits so long as he continued to occupy the office of councilman. Plaintiff was further advised that "it was the city policy to request the signing of a waiver in such cases to provide a definite record for the pension files", notice of the reasons for revocation of the benefits, and notice of the time at which the benefits would be reinstated.

From these representations, plaintiff was informed that he had no right to receive payments or an alternative to complying with defendants' requested waiver. The trial judge emphasized the coercive nature of these representations when he characterized them as creating an "either-else" decision for plaintiff. Neither does the record support a conclusion that plaintiff understood or had reason to believe that he possessed rights that need not be waived. In this context, we cannot conclude that plaintiff's signed waiver was a voluntary relinquishment of a known right.

IV. *Did the trial judge commit reversible error by finding plaintiff guilty of laches and limiting his recovery to a period commencing March 30, 1965, rather than April 1, 1963, the date plaintiff was elected to the common council of defendant city?*

The final issue is based upon plaintiff's allegation that he was not guilty of laches and the trial judge erred by not directing the payment of pension benefits from April 1, 1963, the date he was elected as a member of the Common Council of the City of Detroit. Since the trial judge concluded that plaintiff excessively delayed in seeking his

remedy in the courts, he held that those benefits due prior to March 30, 1965 were "lost due to [plaintiff's] dalliance". Although plaintiff may have been less than diligent to protect his rights, we are constrained to reach a contrary decision.

In *Brydges v Emmendorfer,* 311 Mich 274, 279 (1945), the Court defined laches as follows:

> " 'Time alone does not constitute laches, but there must have been a *change of conditions* which would render it *inequitable to enforce the claim* (21 C J p 212 *et seq.),* or a showing that the defendant was *prejudiced by the delay. Orloff v Stott,* 239 Mich 563 [1927].' *Collins v Lamotte,* 244 Mich 504, 509–510 [1928]."[7] (Emphasis added.)

We find this statement dispositive of the present issue. Neither the record nor stipulation of facts support the conclusion that the conditions have so changed that enforcement of plaintiff's claim commencing April 1, 1963, yields an inequitable result. Similarly there is no evidence that defendants have been prejudiced by the delay.

We, therefore, modify the lower court judgment by directing defendants to pay pension benefits commencing April 1, 1963, less credit for any annuities paid since that date.

As modified by this opinion, the judgment of the lower court is affirmed. No costs, a public question being involved.

All concurred.

---

[7] *Accord, Tray v Whitney,* 35 Mich App 529, 535 (1971).